John C. Fish, Jr., Bar No. 160620
jfish@littler.com
Courtney Chambers, Bar No. 312011
cchambers@littler.com
Emily Mertes, Bar No. 296743
emertes@littler.com
Fernanda Gonzalez, Bar No, 358941
fgonzalez@littler.com
LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, California 94105
Telephone: 415.433.1940
Facsimile: 415.399.8490

Attorneys For Defendant
SAN FRANCISCO BASEBALL
ASSOCIATES LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY MALLEK, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SAN FRANCISCO BASEBALL ASSOCIATES, LLC, a Delaware Limited Liability Company, and DOES 1-50, inclusive,<br><br>Defendants. | Case No.<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT**<br><br>Complaint Filed: August 10, 2026 |

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, California 94105
415.433.1940

Defendant SAN FRANCISCO BASEBALL ASSOCIATES LLC ("Defendant") requests that the Court take judicial notice of the following documents, pursuant to Federal Rule of Evidence 201, in support of SAN FRANCISCO BASEBALL ASSOCIATES LLC's Notice of Removal of Civil Action to Federal Court:

1. The Collective Bargaining Agreement ("CBA") between Service Employees International Union, United Service Workers West ("USWW") (the "Union") and San Francisco Baseball Associates LLC in effect for the period of January 1, 2022, to December 31, 2026. A true and correct copy of the CBA in effect during Plaintiff Allan Swearington's ("Plaintiff") employment with Defendant San Francisco Baseball Associates LLC is attached as **Exhibit A** to the concurrently filed Declaration of Lan Lee in support of Defendant's Notice of Removal.
2. The Memorandum of Understanding ("MOU") between Service Employees International Union, United Service Workers West ("USWW") (the "Union") and San Francisco Baseball Associates LLC. The MOU is authenticated by the accompanying Declaration of Lan Lee and a true and correct copy of the MOU is attached as **Exhibit B** to the concurrently filed Declaration of Lan Lee in support of Defendant's Notice of Removal.
3. The minimum wage in California for employers with 26 or more employees was $15.00 in 2022; $15.50 in 2023; $16.00 in 2024; $16.50 in 2025; and $16.90 in 2026.

## I. LEGAL AUTHORITY

A court may take Judicial notice of any fact not subject to reasonable dispute because it is either: (1) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably questioned, or (2) generally known within the territorial jurisdiction of the court. Fed. R. Evid. § 201(b).

### A. Documents

A court may consider documents not attached to the Complaint if their authenticity is not contested and the resolution of the operative complaint depends on them. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Further, "Courts routinely take judicial notice of the governing collective bargaining agreement where necessary to resolve issues of preemption." *Johnson v. Sky Chefs, Inc*, 2012 WL 4483225 at *1 n.1 (Sep. 27, 2012 N.D. Cal.) (granting request for judicial notice of CBA at motion to dismiss

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, California 94105
415.433.1940

stage); *Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1193 (C.D. Cal. 2015) ("Because the 2015 CBA forms the basis for Live Nation's argument that certain of plaintiffs' claims are completely preempted by the LMRA, the court can consider it in deciding the motions"); *Jones v. AT&T*, WL 902292 at *2 (Mar. 31, 2008 N.D. Cal. ) (taking judicial notice of a CBA because the CBA was "not subject to reasonable dispute" and was "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

In *Sarmiento v. Sealy, Inc.*, 367 F. Supp. 3d 1131, 1142 (N.D. Cal. 2019), the court held: "Courts routinely take judicial notice of the governing collective bargaining agreement where necessary to resolve issues of preemption." In *Sarmiento,* the plaintiff objected to the defendant employer's request for judicial notice by generically arguing that the "accuracy" of the collective bargaining agreement could be questioned. *Id*. The court took judicial notice and admitted the collective bargaining agreement over the objection because "[a] party cannot 'reasonably . . . question[]' the accuracy of a source . . . simply by stating that someone could do so, particularly when the party is aware of and presumably has access to the document." *Id*. The Northern District Court also found judicial notice appropriate because the party requesting admission did not rely on the CBA to establish facts outside the CBA, "[but] rather . . . to show only that the CBA says what it says, for the purpose of determining preemption." *Id.* at 1142- 43.

Here, the CBA, and its MOU, are necessary to determine the issue of preemption under Section 301 of the Labor Management Relations Act. It is also appropriate for the Court to take judicial notice of the CBA and the MOU because Plaintiff cannot dispute the CBA's or MOU's authenticity or "reasonably question" its accuracy. Plaintiff was at all relevant times represented by the Union and covered by the CBA, including its MOU; Defendants are not trying to establish facts outside of the CBA or the MOU; and the CBA's and MOU's existence and authenticity are readily determinable and not reasonably subject to dispute.

**B. Minimum Wage**

The minimum wage rates are a matter of common knowledge in this jurisdiction. They are easily accessible and publicly available on the internet, including the State of California's Department of Industrial Relations website at Minimum Wage Frequently Asked Questions (ca.gov). They also may be found easily by conducting a search on Google, or any other search engine, for "California minimum

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, California 94105
415.433.1940

wage." Under Federal Rules of Evidence § 201, the Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Defendant has satisfied these criteria by this Request for Judicial Notice.

## II. CONCLUSION

For the foregoing reasons, Defendant respectfully requests this Court take judicial notice of the relevant CBAs between Defendant San Francisco Baseball Associates LLC and the Union, and of the California minimum wage rates as set forth herein.

Dated: September 14, 2026

LITTLER MENDELSON, P.C.

*/s/ Fernanda Gonzalez*

John C. Fish, Jr.
Courtney Chambers
Emily Mertes
Fernanda Gonzalez

Attorneys For Defendant
SAN FRANCISCO BASEBALL ASSOCIATES LLC

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, California 94105
415.433.1940

# Exhibit A

# COLLECTIVE BARGAINING AGREEMENT

This Agreement is made and entered into this 23rd day of November 2022, by and between San Francisco Baseball Associates LLC (hereinafter referred to as the "Giants" or the "Employer,") and the Service Employees International Union United Service Workers West ("USWW"), of San Francisco, California (hereinafter referred to as the "Union").

## Section One
## Recognition

The Employer recognizes the Union as the sole collective bargaining agency for security personnel employed by the Employer at Oracle Park, San Francisco, California (the "Ballpark").

## Section Two
## No Discrimination

The Union and the Employer agree that they shall not unlawfully discriminate against any applicant or employee in hiring, promotions, assignments, suspensions, discharge, terms and conditions of employment, wages, training, recall or layoff status because of race, color, ancestry, religion, creed, national origin, age, sex (including pregnancy, childbirth, breastfeeding and/or related medical conditions), disability (as defined by the Americans with Disabilities Act and including HIV and AIDS), maternity status, sexual orientation, genetic information, gender, gender identity or gender expression, marital status, medical condition (including genetic characteristics, cancer or a record or history of cancer), military or veteran status or any other status protected by state or federal law. The Union is to be responsible for explaining this Agreement to its members. No employee or applicant for employment covered by this Agreement shall be discriminated against because of membership in the Union or activities on behalf of the Union during non-working hours on behalf of the Union or as permitted by Employer.

## Section Three
## Employee Status

1. Regular Employees.

a. Ninety (90) days after execution of this Agreement, the number of employees classified as "Regular Employees" shall increase from twenty 20 employees to twenty-four (24) employees. Employer may deploy the additional Regular Employees in roles and/or positions in its sole discretion based on its operational needs. The names of all employees considered Regular Employees as of the date of this Agreement are listed in Exhibit B attached hereto. All Regular Employees will be re-classified into Regular Employee, Level 1 and paid at the corresponding wage rates set forth in Exhibit A. All employees classified as Regular Employees as of January 1, 2022 will be eligible to advance or step-up to Level 2 and subsequent levels as outlined below provided that they meet applicable annual hours worked requirements set forth below, receive annual positive performance evaluations and have not been subject to

disciplinary action during the preceding two-year period. Regular Employees may advance or step-up once every two years, the first opportunity for Regular Employees who have worked in this classification since January 1, 2022 to advance or step-up a level will be on January 1, 2024. Employees who became Regular Employees after January 1, 2022 will be eligible to advance or step-up the year following their completion of two full years as Regular Employees (e.g., a new Regular Employee as of October 1, 2022 would be eligible to step-up to Level 2 on January 1, 2025 provided they meet the eligibility criteria). Regular Employees shall continue to be classified as Regular Employees from year to year throughout the term of this Agreement provided that they have worked at least 1,600 hours in the previous year ("Regular Employee Minimum Annual Hours Worked Requirement"). The Employer may waive the minimum hour requirement in its reasonable discretion if the Regular Employee presents the Employer with bona fide reasons for his, her or their failure to meet the minimum work requirements (e.g., due to a family or medical situation). In cases where an employee is promoted to Regular Employee status mid-year, the Employer, in its reasonable discretion, will waive or pro-rate the minimum hour requirement for that particular year. On or before January 15 of each year of this Agreement, the Employer shall notify the Union if any of the existing Regular Employees failed to meet the Regular Employee Minimum Annual Hours Worked Requirement. At no time shall the number of Regular Employees exceed twenty-four (24). If one of the twenty-four (24) Regular Employees is terminated, resigns, voluntarily transfers to another classification, fails to meet the minimum hour requirement or otherwise leaves the employment of the Giants, the vacant position will be filled within thirty (30) days unless there is a pending grievance pertaining to the vacancy. If such grievance is not resolved within ninety (90) days of the vacancy, the Employer shall temporarily fill the vacancy until such time as the grievance is resolved. If the grievance is resolved in such a manner that the grieving employee is reinstated and resumes work under the classification as a Regular Employee, then the person temporarily filling the vacancy shall be reclassified out of the Regular Employee category and back into the classification they would have filled if they had continued working in his, her or their previous capacity. Any vacancy for a Regular Employee position, including Command Center Employees, may be filled by Employer from internal or external applicants in its sole discretion. Employer shall have the exclusive right to determine the job functions and hiring criteria for Regular Employees and shall have the exclusive right to determine which individuals shall be Regular Employees, including the sole discretion to hire any person it believes fit to be a new Regular Employee regardless of seniority or length of service with the Employer. Employer will notify Union of any vacancy to allow Union to notify interested employees that may wish to apply for the position. Interested employees shall notify Employer of his/her/their interest and may be required to fill out an application for such position, as may be required by Employer. All Regular Employees shall satisfy the California Guard Card Requirement set forth in Section 4 below. If and when such a vacancy occurs, the Giants shall meet with the remaining Regular Employees to determine whether any employee has an interest in adjusting his, her or their work schedule. The Giants shall consider any requests for schedule adjustments but reserve the right to make scheduling decisions.

b. Command Center Employees. A subset of the Regular Employees outlined in Exhibit B hereto are assigned to work in the ballpark's "Command Center." These employees shall be designated as "Command Center Employees." As of October 1, 2022, eight employees are currently considered Command Center Employees. All Command Center

Employees will be initially re-classified into Command Center Employees, Level 1 and paid at the corresponding wage rates set forth in Exhibit A. All full-time employees classified as Command Center Employees as of January 1, 2022 will be eligible to advance or step-up to Level 2 and subsequent levels as outlined below provided that they meet applicable annual hours worked requirements set forth below, receive annual positive performance evaluations and have not been subject to disciplinary action during the preceding two-year period. Command Center Employees may advance or step-up once every two years, the first opportunity for Command Center Employees who have worked in this classification since January 1, 2022 to advance or step-up a level will be on January 1, 2024. Employees who became Command Center Employees after January 1, 2022 will be eligible to advance or step-up a level the year following their completion of two full years as a Command Center Employee (e.g., a new Command Center Employee as of October 1, 2022 would be eligible to step-up to Level 2 on January 1, 2025 provided they meet the eligibility criteria). Command Center Employees shall continue to be classified as Command Center Employees from year to year throughout the term of this Agreement provided that they have worked at least 1,600 hours in the previous year ("Command Center Employee Minimum Annual Hours Worked Requirement"). The Employer may waive the minimum hour requirement in its reasonable discretion if the Command Center Employee presents the Employer with bona fide reasons for his, her or their failure to meet the minimum work requirements (e.g., due to a family or medical situation). In cases where an employee is promoted to Command Center Employee status mid-year, the Employer, in its reasonable discretion, will waive or pro-rate the minimum hour requirement for that particular year. On or before January 15 of each year of this Agreement, the Employer shall notify the Union if any of the existing Command Center Employees failed to meet the Command Center Employee Minimum Annual Hours Worked Requirement. Part-time employees working shifts in the Command Center shall be paid at the Command Center Employee wage rate Level 1 shown on Exhibit A, but shall not be considered Command Center Employees under this Agreement. Employer may consider existing employees for the new Command Center positions but shall have the full discretion to hire employees from any source. The Employer shall have the exclusive right to determine the job functions and hiring criteria for Command Center Employees and shall have the exclusive right to determine which individuals shall be Command Center Employees, including the sole discretion to hire any person it believes fit to be a Command Center Employee regardless of seniority or length of service with the Employer. Other employees may work shifts in the Command Center and/or temporarily relieve Command Center Employees during breaks and lunches but shall not be considered as Command Center Employees. Each newly-hired Command Center Employee shall be considered a Probationary Employee for the first six (6) months of his, her or their employment, provided that such employee will be paid at the Command Center Employee Level 1 wage rate shown on Exhibit A attached hereto. If any existing Regular Employee listed in Exhibit B is hired as a Command Center Employee, such employee shall be considered on a trial basis for the first sixty (60) day period of his, her or their employment as a Command Center Employee. During this sixty (60) day trial period, these employees shall be paid at the Command Center Employee wage rate shown on Exhibit A. During the trial period, Employer shall not fill the vacancy on the Regular Employee list created by the hiring of an existing Regular Employee as a Command Center Employee and these employees shall retain all of the benefits of being a Regular Employee. If, at the conclusion of the trial period, the employee is retained as a Command Center Employee, the vacancy created on the Regular Employee list shall be filled in accordance with the

procedures set forth in this Agreement. At any time up through the end of the trial period, the Giants may determine that the existing Regular Employee is not suited to be a Command Center Employee. If the existing Regular Employee is not retained as a Command Center Employee at the conclusion of the trial period, the employee shall resume his, her or their duties as a Regular Employee (provided that the reason for not being retained as a Command Center Employee did not constitute just cause for termination as set-forth in paragraph 13 of this Agreement). All Command Center Employees shall satisfy the California Guard Card Requirement set forth in Section 4 below.

2. Supervisory Employees. All employees who are designated and act in a supervisory capacity shall be deemed Supervisory Employees. All existing employees designated by Employer as Supervisory Employees will be re-classified into Supervisory Employees, Level 1 and paid at the corresponding wage rates set forth in Exhibit A. All employees classified as Supervisory Employees as of January 1, 2022 will be eligible to advance or step-up to Level 2 and subsequent levels as outlined below provided that they receive annual positive performance evaluations and have not been subject to disciplinary action during the preceding two-year period. Supervisory Employees may advance or step-up once every two years, the first opportunity for Supervisory Employees who have worked in this classification since January 1, 2022 to advance or step-up a level will be on January 1, 2024. Employees who became Supervisory Employees after January 1, 2022 will be eligible to advance or step-up the year following their completion of two full years as a Supervisory Employee (e.g., a new Supervisory Employee as of October 1, 2022 would be eligible to advance or step-up to Level 2 on January 1, 2025 provided they meet the eligibility criteria. Employees that fill-in for a Supervisory Employee during his, her or their designated meal or rest breaks shall not be considered a Supervisory Employee and shall be paid at such employee's standard rate of pay during such time. Employees that work Supervisory shifts shall not be considered Supervisory Employees, but shall be paid at the Supervisory Employee Level 1 rate of pay during such time. The Employer shall have the exclusive right to determine the job functions and criteria for Supervisory Employees and shall have the exclusive right to determine which individuals shall be Supervisory Employees, provided that each Supervisory Employee has (a) completed probation, (b) holds a valid California Guard Card, and (c) has demonstrated security experience. All Supervisory Employees shall satisfy the California Guard Card Requirement set forth in Section 4 below.

3. Part-Time Employees. Except as indicated below, all employees who are not Regular Employees, Command Center Employees, Supervisory Employees or Probationary Employees shall be Part-Time Employees. All employees classified as Part-Time Employees shall satisfy the California PSO Requirement set forth in Section 4 below. The Part-Time Employee category shall be comprised of 20 classes based on tenure and hours worked, as shown on Exhibit A, provided that Part-Time Employees working in the Command Center shall be paid at the Command Center Employee wage rate Level 1 for hours worked in the Command Center, but are classified as Part-Time Employees at their applicable level (1-20) set-forth in Exhibit A. Part-Time Employees that fill-in for a Supervisory Employee during his, her or their designated meal or rest breaks shall not be considered a Supervisory Employee and shall be paid at such employee's standard rate of pay during such time. Part-Time Employees who work full shifts in the place of Regular Employees or Supervisory Employees shall be paid at the Regular.

Employee or Supervisory Employee Level 1 rate. For work performed outside of normal business hours in ticket office or executive office positions where Regular Employees are not customarily stationed during such time, Part-Time Employees shall earn their standard rate of pay. As described below, a Part-Time Employee will move up, down or maintain his, her or their respective classification based on the number of Full Venue Events worked annually. A Full Venue Event ("FVE") is defined as any Major League Baseball game or any other ballpark event where it is anticipated that attendance will exceed 15,000 patrons.

4. Probationary Employees. Each newly hired employee shall be a Probationary Employee for his, her or their first two hundred fifty (250) hours of work with the Employer, except for Command Center Employees and Part-Time Employees working regular shifts in the Command Center who shall remain Probationary Employees for the first six (6) months of his, her or their employment. All employees hired on or after the execution of this Agreement must satisfy the California Guard Card Requirement or the California PSO Card Requirement, as applicable, within ninety (90) days of their hire date. Probationary Employees that fail to meet the California Guard Card Requirement or California PSO Requirement, as applicable, are subject to termination. The Giants shall have sole discretion in determining whether and under what circumstances to retain or terminate Probationary Employees. After working two hundred fifty (250) hours, a non-Command Center Employee shall become a Part-Time Employee. A Probationary Employee that is hired with a California Guard Card will be paid at the Class 1 wage rate and will thereafter step up, down or maintain such class based on the number of FVEs worked, but remain a Probationary Employee for purposes of discipline or discharge until they meet the applicable threshold requirement of 250 hours worked or six months of employment.

## Section Four
## Qualification for Employment

All Regular and Supervisory Employees shall be required to obtain and maintain a valid "California Guard Card" and thereafter maintain a valid California Guard Card (the "California Guard Card Requirement") by January 15, 2023, such requirement including a minimum of forty (40) hours of training, provided that any Regular, or Supervisory Employees hired on or after the execution date of this Agreement must satisfy the California Guard Card Requirement within ninety (90) days of such employee's hire date. Employees working regular shifts in the Command Center shall also meet the California Guard Card Requirement. With the exception of employees that possess a California Guard Card prior to the execution of this Agreement, all Part-Time Employees not working regularly in the Command Center or as Supervisory Employees shall be required to obtain and maintain a valid California Proprietary Private Security Officer Card ("California PSO Card") by January 15, 2023, such requirement including a minimum of sixteen (16) hours of training, provided that any Part-Time Employee not working regularly in the Command Center or as Supervisory Employees who hired on or after the execution date of this Agreement must satisfy the California PSO Requirement within ninety (90) days of such employee's hire date. The steps to obtain a valid California Guard Card or California PSO Card include enrolling in and completing necessary coursework and training, passing the required examination, passing the required background check, paying the necessary fees and meeting any other such requirements as may be mandated from time to time by the agency administering the California Guard Card program. The Employer shall pay or reimburse

employees for the costs of such employee's application fee, enrollment in a California Guard Card or California PSO Card course, as applicable, and the required background check. The Employer will also pay each employee his, her or their standard rate of pay for the required hours spent by that employee in training and taking the exam. The Employer will offer a California Guard Card or California PSO Card course, as applicable and/or designate a particular California Guard Card or California PSO Card course or courses for employees to enroll to satisfy this requirement. Employees may satisfy the California Guard Card Requirement or the California PSO Requirement by taking any course, but will not be eligible for reimbursement of the costs unless they are enrolled in a course specifically authorized by the Employer. Any employee who fails to meet the California Guard Card Requirement or California PSO Requirement by the applicable deadline is not eligible to receive pay for repeating the training and for reimbursement of costs. Meeting the California Guard Card Requirement or California PSO Requirement, as applicable, shall be considered a mandatory requirement for employment as a security guard for the Employer and a failure to do so by the applicable date may result in termination as set forth in the following paragraph. Each employee is responsible for paying the annual fee established for maintaining a valid California Guard Card or California PSO Card. The Employer reserves the right to extend the deadlines described above for obtaining a valid California Guard Card or California PSO Card.

Employees that fail to satisfy the applicable California Guard Card Requirement or California PSO Requirement by January 15 of each year during the Term of this Agreement shall be notified of their noncompliance and granted a grace period to March 15 of such year to satisfy the requirement ("Initial Guard Card Grace Period"). If an employee has not met the applicable requirement by March 15 of such year they will be suspended and notified that they will be terminated if they do not comply with the applicable requirement by June 15 ("Notice of Termination Period"). Employees without a valid card by June 15 of such year will be terminated. During the Initial Guard Card Grace Period and Notice of Termination Period, impacted employees will not be eligible for an increase in pay or promotion in classification. Upon the satisfaction of the applicable guard card requirement, the Employee is eligible to receive his, her or their applicable pay increase or a promotion in classification effective as of the date the requirement is satisfied.

If an employee successfully completed all of the coursework and passed the required examinations, but is denied issuance of a California Guard Card or California PSO Card solely because of a criminal conviction(s) revealed in his, her or their Background Check, then the affected employee shall have the right to petition the Employer to retain his, her or their job. The Employer, Union and the employee shall meet and confer as to the date and nature of the conviction. On a case by case basis, the Employer may, in its discretion, waive the California Guard Card Requirement or California PSO Requirement and such employee shall maintain his, her or their classification if the conviction is minor, remote in time and is not reasonably likely to interfere with the employee's ability to discharge his, her or their job responsibilities.

In order to comply with Major League Baseball's directive to provide a safe and secure facility, employees covered under this Agreement shall be subject to an annual background check. Each employee must complete the annual background check on or before March 1 of each year. On or before January 15 of each year, the Employer shall provide each employee with the

paperwork necessary to process the background check. If an employee fails a background check, such employee may be terminated by the Employer. On a case by case basis, the Employer may, in its discretion, waive this requirement and such employee shall continue to be employed by the Employer if the conviction that is the basis for such background check failure is minor, remote in time and is not reasonably likely to interfere with the employee's ability to discharge his, her or their job responsibilities.

Part-Time Employees that work 30 or less FVE's in a calendar year are subject to termination. The Employer will waive such requirement if an employee failed to meet the threshold due to a bona fide reason (e.g., documented family or medical leave). If an employee is hired mid-season, the Employer, in its discretion, will waive or pro-rate the FVE requirement for that year.

**Section Five**
**Union Membership**

1. Union Membership. Membership in good standing in the Union not later than the thirty-first (31st) day following the beginning of employment or not later than the thirty-first (31st) day following the effective date of this Agreement, whichever is later, shall be a condition of employment for employees covered by this Agreement. For the purpose of this section only, tender of the initiation fees not later than the thirty-first (31st) day following the date of employment or not later than the thirty-first (31st) day following the effective date of this Agreement, whichever is later, and tender thereafter of the regular monthly periodic dues uniformly required as a condition of retaining membership shall, for the purpose of this Agreement, constitute membership in good standing with the Union.

2. Hiring. All new applicants for employment as security personnel shall be subject to pre-hire drug screening and a background investigation. The Employer shall have the right to hire employees from any source. The Employer agrees to notify the Union in advance of hiring additional employees to job classifications covered by this agreement wherever practical so that the Union may refer to the Employer potential applicants. It is understood that the Employer shall have no obligation to interview or hire any applicant referred by the Union. The Employer agrees within thirty (30) days of the date of hiring to notify the Union of the name or names, home addresses, date of hire, personal email address (if known) and primary telephone number of the persons hired. The Employer has the right to transfer workers from one post to another at its discretion. Refusal on the part of the employee to comply with position change requests is grounds for termination. The Employer has full discretion as to whether an employee is considered "fit, able and ready to work."

3. Dues and COPE Checkoff. If duly authorized by an employee, the Employer shall deduct from the employee's paycheck all initiation fees and periodic dues as required by the Union and voluntary contributions to the Union's Committee on Political Education ("COPE"). Employer shall make such authorized deductions from the employee's paycheck each month and remit them to the Union not later than the 20th of the month following the month in which such deductions were made.

4. Alternate Methods of Dues Deductions. The parties acknowledge and agree that the term "individual authorization" as provided in this Agreement includes authorizations created and maintained electronically and containing electronic signatures consistent with state and federal law. The Union, therefore, may transmit electronic records to the Employer via electronic mail or other electronic transmission to verify Union membership, authorization for voluntary deduction of Union dues and fees from wages or payments for remittance to the Union, and authorization for voluntary deductions from wages or payments for remittance to COPE, subject to the requirements of state and federal law.

5. Permissible Time Periods for Stopping Dues Deductions. An employee who is paying dues or an amount equal to dues by payroll deduction and wishes to make such payments directly to the Union, may stop such payroll deductions by giving written notice to both the Employer and the Union during either of the following periods: (a) January 1 through January 31 of each year during the Term of this Agreement, or (b) the first 30 days of such employee's employment with the Employer. The Employer will honor employee check-off authorizations, regardless of whether the employee is a member of the Union. Such notification to stop payroll deduction does not relieve the employee of his or her requirement to pay union dues as a condition of employment, subject to applicable law.

6. Notification of New Employees. The Employer will provide Union with monthly notifications setting forth any new hires, and listing employees who have left the Employer (e.g., resigned, terminated). The notification shall specify the employee's name, address and contact information.

7. New Hire Packet. The Employer shall provide, at the time of hire, a Union New Hire Packet to all new employees. The Union New Hire Packet will be furnished by the Union and will be labeled with Union insignia such that the employee understands the packet is from the Union and not the Employer. Upon the employee's completion of a membership application during the new hire process, the Employer shall collect the membership applications and transmit them to the Union.

8. Membership Lists. On or before March 31 of each year during the Term of this Agreement, the Employer shall send to the Union a list of all current bargaining unit employees, which shall include each employee's name, contact information, work location, base hourly pay rate, and union dues deductions. The list will be provided in spreadsheet format, or an alternate agreed-upon format, and transmitted electronically. From time to time, the Union may ask Employer to verify its own membership lists. If requested, the Employer shall respond within thirty (30) days.

9. New Hire Orientation. Employer agrees to reasonably notify Union of scheduled formal new hire orientation and/or training sessions and allow the Union to make a presentation of up to fifteen (15) minutes during such sessions. The Union agrees to provide Employer with materials it distributes and agrees to refrain from making any disparaging remarks regarding Employer at the new hire orientation and/or training sessions.

**Section Six**
**Vacations**

Each Regular Employee shall accrue ten (10) days of vacation with pay annually. Upon completion of five (5) full years of service as a Regular Employee, a Regular Employee shall accrue fifteen (15) days of vacation with pay annually. Upon completion of ten (10) full years of service as a Regular Employee, a Regular Employee shall accrue twenty (20) days of vacation annually. Each employee may accrue vacation to a maximum of twice his, her or their annual accrual. Any Regular Employee whose employment terminates shall receive a payment equal to the amount of accrued vacation due him or her. Each employee must request vacation at least 30 days prior to such vacation. Employer shall acknowledge such request within 72 hours of receipt and shall notify such employee within 10 days of whether the vacation is approved. If the vacation request is not acted upon within 10 days of receipt, the request will be deemed approved.

**Section Seven**
**Holidays**

Employees shall be entitled to overtime pay for Martin Luther King Jr. Day, President's Day, Memorial Day, Juneteenth, Fourth of July, Labor Day, Thanksgiving, Day after Thanksgiving, Christmas Day and New Year's Day. Employees that work overtime on a holiday shall receive double time and one-half for all overtime hours worked. Provided that shifts are available and schedules permit, Regular Employees shall be given the opportunity to work on holidays prior to scheduling other classifications of employees under this Agreement. In addition, Regular Employees are granted the use of two floating holidays annually. For sake of clarity, the Juneteenth holiday shall be the day observed by the federal government for such holiday.

**Section Eight**
**Hours**

The Employer retains the right to establish what shall constitute a normal workday and to schedule employees at its discretion, provided that if the Employer reduces the number of employees typically used for FVEs such that Part-Time Employees classified at Class 6 through 20 are unable to schedule on a regular basis, the Employer and the Union will meet and confer to discuss the possibility of introducing a seniority based priority scheduling system. Notwithstanding the above, any employee required to work less than four (4) hours shall receive a minimum of four (4) hours pay, except that there shall be no minimum hour requirement with respect to California Guard Card or California PSO Card training, as applicable, or online training performed by an employee. Employees participating in online training will be paid for the reasonable amount of time necessary to complete the required training. Regular Employees required to work less than six (6) hours shall receive a minimum of six (6) hours pay; provided, however, that they shall receive only four (4) hours pay if the work shift is shortened due to the cancellation of a game (i.e., rain, natural disaster, civil unrest) or if the work shift occurs during a strike, lockout or other work stoppage involving the Major League Baseball Players Association, and provided, further, that no minimum hour requirement shall apply with respect to California

Guard Card or California PSO Card training or other training performed by an employee online. Employees shall be entitled to rest breaks as required by law. On a case by case basis, the Employer may, in its discretion, provide employees with disabilities travel time accommodations to and from lunch or a rest break. There is no guarantee for greater than a four (4) hour shift. Sunday through Saturday shall constitute a work week. Any work performed in excess of eight (8) hours per day or forty (40) hours per week shall be paid at the rate of time and one-half (1 ½). In cases where Regular Employees have already worked thirty-five (35) hours in a given work week the six (6) hour minimum requirement may be waived for the sixth workday. Notwithstanding anything to the contrary herein, employees that voluntarily leave their shift early shall be paid only for the hours they worked prior to leaving.

**Section Nine**
**Wages**

The minimum hourly rates of pay which shall pertain during the term of this Agreement are set forth by classification in Exhibit A hereto. The rates for Part-Time Employees are subject to annual adjustment based upon an employee achieving or failing to achieve certain thresholds of work commitment. All Part-Time Employees are required to work a minimum of thirty-one (31) FVEs each calendar year. Each year under this Agreement the following work commitment shall be required:

- A Part-Time Employee that does not work thirty-one (31) FVEs in a calendar year is subject to termination.
- A Part-Time Employee that works less than forty-six (46) FVEs is subject to demotion in one pay Class, including return to Probationary wage.
- A Part-Time Employee that works forty-six (46) or more FVEs but less than sixty (60) FVEs shall remain at the same pay Class.
- A Part-Time Employee that works sixty-one (61) or more FVEs shall be promoted one pay Class.
- A Part-Time Employee that works seventy-five (75) or more FVEs shall receive a $500 bonus.
- A Regular Employee will receive a $500.00 annual bonus if they receive positive performance reviews, are not subject to discipline and have good attendance.
- A Part-Time Probationary Employee hired with a California Guard Card will be paid at the Class 1 wage rate and will thereafter step up, down or maintain such class based on the number of FVEs worked.

The FVE work commitment requirements may be waived by the Employer if the employee presents bona fide reasons for his, her or their failure to meet the minimum work requirements (e.g., due to a family or medical situation). If an employee is hired mid-season, the Employer, in its discretion, will waive or pro-rate the FVE requirement for that year, provided that such employee must meet the FVE requirements in the subsequent year.

The Employer shall notify the Union by February 15 of each year of the Part-Time Employees that did not meet the minimum FVE work requirement to retain his, her or their positions or that would result in a demotion.

If any employee is required or instructed to wear a uniform or any specifically designated article of clothing or footwear (other than standard street shoes), the Employer shall be responsible for furnishing them to the employee. The employee is responsible for maintaining all furnished apparel in a satisfactory condition and may be required to pay a refundable deposit of Seventy Five Dollars ($75.00). The Employer agrees to comply with all applicable laws, if any, with respect to cleaning furnished apparel. Employees may be required to perform work outside of the normal duties and responsibilities of security personnel at the discretion of the Employer from time to time in situations involving an emergency or in the case of an infrequent event. Employer shall exercise reasonable efforts to provide employees with discount parking options when coming to work at the Ballpark.

**Section Ten**
**Sick Leave, Maternity Leave, Jury Duty & Bereavement Leave**

This Agreement shall operate to waive all provisions of the California Healthy Workplace Healthy Family Act of 2014 (AB 1522), and shall supersede and be considered to have fulfilled all requirements of the law as presently written, and/or amended during the life of this Agreement. This waiver of the California Healthy Workplace Healthy Family Act of 2014 was agreed to by the Union in exchange for providing premium wages at, or in excess of, 130% of the California Minimum Wage requirements, requiring final and binding arbitration of disputes concerning the application of the paid sick days provisions, and providing an alternative income protection program in the form of paid sick leave by the Employer.

This Agreement shall also operate to waive any provisions of the San Francisco Paid Sick Leave Ordinance, San Francisco Administration Code Section 12W, provided that, except with respect to Probationary Employees, Employer shall provide paid sick leave benefits to non-Probationary Regular Employees and Part-Time Employees in accordance with the provisions of the San Francisco Paid Sick Leave Ordinance, San Francisco Administration Code Section 12W, attached hereto as Exhibit C and incorporated by reference, including, but not limited to, paid sick leave accrual of one hour of paid sick leave per every 30 hours worked. Probationary Employees shall not be entitled to accrue paid sick leave until the completion of their applicable probationary period. Upon completion of such probationary period, such employee shall be entitled to paid leave sick benefits in accordance with the San Francisco Paid Sick Leave Ordinance. This waiver of the San Francisco Paid Sick Leave Ordinance was agreed to by the Union in exchange for good and valuable consideration by the Employer. Notwithstanding anything to the contrary, each employee using paid sick leave will be paid at his, her or their standard rate of pay for such time regardless of the position for which they were scheduled to work (e.g. a Part-Time Employee Class 5 scheduled to work a Supervisory Employee's shift will be paid at the Class 5 rate). The Employer may require a doctor's certificate or other reasonable proof of illness from an employee after his, her or their third consecutive day of sick leave. Such sick leave with pay shall be paid in the following manner: Regular Employees shall be reimbursed for the actual amount of hours scheduled for each day lost, but not to exceed eight (8) hours, and all other Employees shall be reimbursed for the actual amount of hours scheduled, but not to exceed eight (8) hours or be less than six (6) hours for each day lost. Employees remain entitled to request sick leave whenever applicable even if an employee does not have paid sick

leave accrued. An employee's paid sick leave accrual shall carry-over from year to year as long as the employee remains employed with the Giants.

In the event workers' compensation payments cover all or part of the period during which sick benefit allowances are paid, the sum of the two sources of payments shall not exceed the sick benefit payable for the period. These same rules shall apply to unemployment compensation disability payments.

A maternity/paternity leave of absence without pay will be granted in accordance with applicable law. In accordance with the Employer's practice, a doctor's certificate may be requested to verify disability, the extent of the leave or the ability of the employee to return to work. Any earned sick leave benefits shall be granted for maternity leave.

The Employer shall grant Regular Employees a leave of absence with pay if the Regular Employee is summoned to appear for jury duty in the manner prescribed by Law. Paid jury service shall be capped at a maximum of ten (10) paid days annually. Compensation for jury duty shall not exceed standard wages for the day, and the employee shall be paid an amount equal to the full shift pay less the amount paid for jury duty, not including mileage. Regular Employees shall promptly submit proper documentation of a jury duty summons, length of time served and pay received to the Employer. The Regular Employee shall provide any additional supporting documentation necessary to verify jury duty service to the payroll department in order to receive standard pay. Unpaid leaves of absence shall be granted to any employee who has been served a subpoena for personal appearance at a trial or hearing.

The Employer shall grant Regular Employees up to three days of paid leave for the loss of an immediate family member. "Immediate Family Member" shall mean spouse, children, registered domestic partner, common law spouse, siblings, grandparents, grandchildren, aunts, uncles and parents. Compensation shall not exceed standard wages for the day, and the employee shall be paid an amount equal to the full shift pay. The Regular Employee shall provide supporting documentation as may be reasonably requested by Employer.

## Section Eleven
## Health & Welfare

Each Regular Employee who has worked and/or been paid for one hundred twenty (120) straight time hours or more during the preceding calendar month is eligible to receive health benefits. Unless otherwise agreed upon, the health coverage shall be administered by the General Employees Trust Fund and provided under Composite Menu Plan C 18 or its equivalent.

All Employer contributions referred to in this section shall be paid into the General Employees Trust Fund in accordance with the procedures and processes set forth below and in the Restated Trust Agreement for the General Employees Trust Fund (effective as of February 1, 1973 and restated as of September 1, 2010). Between the first and tenth day of each month, the Employer shall submit a list of Regular Employees who have worked the requisite number of hours to qualify for health benefits during the preceding calendar month. The list shall indicate the number of hours worked by each Regular Employee. Paid vacation, paid holidays and paid

sick leave are considered as hours worked in computing health and welfare plan contributions.

All Regular Employees and the Employer shall share the cost of health benefits. Each Regular Employee receiving benefits shall pay an amount equal to 10% of the monthly costs of the Composite Menu Plan C 18 and Employer shall pay the difference of the monthly costs of such plan to the General Employees Trust Fund (e.g. 90%).

Employees who are eligible for GETF health insurance coverage may decline coverage if they provide proof of alternative health insurance coverage. In such cases, no GETF Premium shall be applicable and owed by Employer or employee, nor shall Employer be required to extend insurance coverage to additional employees. Employees who elect to decline coverage through the GETF may be excluded from receiving GETF coverage for the remainder of this Agreement.

The Employer shall comply with all reasonable and applicable regulations governing the administration of the General Employees Trust Fund unless otherwise provided for herein and shall maintain, furnish, and make available for audit at Employer's office such payroll books and records as the Trust Fund may reasonably require and upon reasonable advance notice. The Employer agrees to negotiate in good faith and thereafter execute all reasonable documents required by the Trust Fund to facilitate the administration of the health benefits described above.

From time to time, but not more often than once per year, the Employer shall have the option to meet and confer with the Union to discuss potential health care options that may provide reasonably equivalent coverage at lower costs than provided by the General Employees Trust Fund. Both parties are committed to providing health insurance of the general nature and character of the current plan, but at the lowest reasonable cost available. If the parties agree that there may be reasonably equivalent coverage for a better price, the Employer shall investigate possibilities and submit a comprehensive proposal for health coverage for formal consideration by the Regular Employees. The Regular Employees shall consider the proposal and vote on whether or not to endorse its formal exploration within thirty (30) days of its receipt. If the Regular Employees vote to approve the formal consideration of an alternative health plan, the parties shall work diligently with the General Employees Trust Fund to transition to the alternative plan.

**Section Twelve**
**401(k)**

During the Term of this Agreement, Employer shall contribute the sum of One Dollar ($1.00) for each hour worked by Regular Employees. Beginning on January 1, 2023, Employer shall contribute the sum of One Dollar and Twenty-Five cents ($1.25) for each hour worked by Regular Employees and on January 1, 2025 such contribution shall increase to One Dollar and Fifty cents ($1.50). The Employer shall make contributions to the 401(k) accounts of each Regular Employee with each paycheck. Paid vacation, paid holidays and paid sick leave are considered as hours worked in computing pension contributions.

The Union and Employer shall act cooperatively and in good faith towards the

maintenance of the 401(k) plan. The Union and Employer agree that no pension plan was established and that no contributions shall be made to any other retirement plan except the 401(k) plan envisioned by this Agreement. The payroll records of the Employer, pertaining only to employees covered by this Agreement, shall be open for reasonable inspection by the Union.

## Section Thirteen
## Discipline & Discharge

The Employer shall have the right to discipline or discharge any Regular, Command Center or Part-Time Employee for just cause. Copies of all written discipline shall be provided to the Union within five (5) business days of their issuance. During an employee's probationary period, the Employer shall have the sole discretion in determining whether to retain or release a Probationary Employee.

## Section Fourteen
## Grievance & Arbitration

A grievance is any dispute between the Employer and an employee or the Union, regarding the interpretation, application or alleged violation of any of the terms of this Agreement. Grievances shall be limited to events and occurrences arising during the term of this Agreement or any extension thereto.

Grievances must be presented in writing to the Employer within ten (10) business days from the date the incident giving rise to the grievance occurred, or the date facts giving rise to the grievance were discovered or should have been discovered. The written grievance shall specify in detail the facts alleged to give rise to the grievance and shall set forth the applicable section(s) of this Agreement alleged to be violated thereby, and the remedy sought for the grievance. Failure to present the grievance within the time and in the manner described shall constitute a waiver of the grievance.

The parties shall meet and confer to consider the grievance and determine whether it can be resolved informally within ten (10) days of the date that the grievance is properly submitted ("Informal Mediation Session"). If the parties cannot resolve the grievance, then the grieving party may, by written notice to the other party, request arbitration of the grievance. Failure to request arbitration within ten (10) business days of the Informal Mediation Session shall constitute a waiver of the grievance. The parties shall meet to choose an arbitrator within five (5) business days of the date the request for arbitration is made. In the event the parties are unable to agree upon the selection of an arbitrator, the party seeking arbitration shall obtain a list of seven (7) names from the Federal Mediation and Conciliation Service, from which the parties shall alternatively strike names. The party striking first shall be decided by coin toss. The decision of the arbitrator shall be final and binding on the parties and the employees.

The arbitrator shall have no authority to add to, delete or alter any provision of this Agreement. The arbitrator shall have no authority to question the Employer's exercise of discretion in its termination of a Probationary Employee.

The cost of the arbitration and the compensation and expenses of the arbitrator shall be borne by the losing party. If there is a dispute as to which party constitutes the losing party for purposes of this section, the matter shall be decided by the arbitrator.
Each party shall bear the expense of presenting its own case.

Claims for unpaid wages, civil penalties, or other individual relief pursuant to the California Labor Code Private Attorney General Act of 2004 ("PAGA") ("statutory grievance") shall be resolved on an individual or "all affected" basis exclusively through binding arbitration before an impartial arbitrator and shall not be brought in a court of law or any administrative agency such as the California Labor Commissioner. Such arbitration shall follow the arbitration procedures set forth above.

**Section Fifteen**
**No Strike/No Lockout**

Neither the Union nor any employee shall engage in or participate directly, or indirectly, in any strike, sympathy strike, slowdown picketing, sick-in, stoppage, boycott or other interference with, or interruption of work or the Employer's operations during the term of this Agreement, and the Employer will not lock out any employee during the term of this Agreement.

Except as outlined herein, employees who violate the term of this section shall be subject to disciplinary action or discharge at the Employer's discretion, and shall have recourse to grievance or arbitration for the sole purpose of determining whether they did in fact engage in conduct which violates the terms of this section. Employees shall not be subject to the disciplinary action outlined in the preceding sentence if the Employee refuses to go through or work behind any lawful primary picket line officially sanctioned by the San Francisco Labor Council and SEIU-USWW and relating to a dispute directly involving Employer. The arbitrator shall not have the authority to review the level of discipline imposed by the Employer for violation of this section. The Union shall exercise all reasonable means to stop any violation by any employee of the terms of this section.

Any claim by one party that this section has been violated by the other party or by any employee, and in which the party allegedly in violation of this section claims that no other section of this Agreement is in dispute shall, at the request of the party claiming the violation, be submitted to arbitration and heard by the arbitrator within twenty-four (24) hours. The arbitrator shall issue an immediate award that shall be final and binding and judicially enforceable. Because it is extremely difficult and impractical to determine and compute the extent of monetary damage caused by the violation of this section, the parties agree that, in addition to injunctive relief, the arbitrator shall be empowered to award liquidated damages, which shall be in the amount of Two Thousand Dollars ($2,000) for each day or part thereof during which a violation of this section occurred.
Nothing in this Agreement shall be construed as preventing a party from seeking judicial injunctive relief for violation of this section.

**Section Sixteen**
**Management Rights**

The Employer reserves all of the rights, powers and authority inherent in management, except as specifically limited by the express provisions of this Agreement.

The Employer shall have the right to make safety and work rules and to adopt and from time-to-time modify, rescind or change such safety and work rules, provided they are not inconsistent with the express terms of this Agreement, and provided the Employer has given the Union reasonable opportunity to discuss them with the Employer prior to their implementation.

The Employer shall have the right to subcontract any or all of the services provided by employees covered by this Agreement, provided the Employer has first notified the Union of its intent to subcontract and has given the Union the opportunity to discuss with the Employer the effects which subcontracting would have on the bargaining unit employees.

**Section Seventeen**
**Union Access**

A Union representative shall be permitted access to Employer's facilities for the purpose of enforcing the provisions of this Agreement, provided that (a) such agent shall have given a minimum of eight (8) hours prior notice of his/her intent to visit the facility, (b) such notice shall be given to Employer during normal business hours, and (c) such agent shall not interrupt or in any way interfere with an event or the performance of work by a bargaining unit member. The Employer may, in its reasonable discretion, waive the 8-hour requirement.

The Employer recognizes the right of the Union to designate or elect shop stewards and alternates. The Employer recognizes the shop stewards or alternates, so designated or elected, as the representatives of the Union.

During FVEs, the Employer will endeavor to make the break room near operations office/locker rooms accessible for employee breaks. If the room is not available, the Employer will endeavor to make alternate rooms available for employee breaks. The Employer shall provide Union a bulletin board in the break room near the Ballpark Operations office and/or Employee Locker Rooms for the Union to post materials. On or before March 1, each year during the Term, Employer shall also provide the Union a list of currently scheduled FVEs for the upcoming year. Such list is subject to change as additional FVEs may be added and/or existing FVEs may be rescheduled or cancelled. Annually, the Union may hold a training/discussion session to familiarize employees with the terms of this Agreement and discuss other labor relations issues. Employees will not be paid by the Employer for attending the annual Union meeting. Employer will provide the Union space at the Ballpark for its annual meeting.

**Section Eighteen**
**Sole & Entire Agreement**

This Agreement shall constitute the sole and exclusive Agreement concerning the wages, hours and working conditions of all bargaining union employees and supersedes any written, oral or implied agreement pertaining to the employment of such employees.

**Section Nineteen**
**Check Off**

The Employer agrees to deduct from the pay of each employee the membership dues required to maintain good standing as defined by the Constitution and Bylaws of the Union. The Union shall advise the Employer of any adjustments made in membership dues in accordance with the Constitution and Bylaws of the Union. Membership dues shall be deducted one (1) month in advance; that is, February dues shall be deducted from the January paycheck and so on in a like manner; permit fee for each shift worked shall be deducted in the same pay period for which the work shifts are payable. All sums deducted for monthly dues and initiation fees shall be remitted to the Secretary-Treasurer of the Union not later than the twenty-fifth (25th) day of the calendar month in which such deductions are made, together with a list showing the names and addresses and social security numbers of employees and the amount of deduction made. It is understood and agreed between the parties that deduction of Union membership dues shall be made only on the basis of written authorizations from the individuals affected. The Union shall defend and hold Employer harmless and indemnify Employer for any claim brought by any person or entity based on the Employer's implementation of this provision.

**Section Twenty**
**Term of Agreement**

This Agreement shall be effective upon execution and retroactive to January 1, 2022, and shall remain in full force and effect until December 31, 2026, and shall continue in effect thereafter with the same terms then in effect from year-to-year unless either party notifies the other party in writing sixty (60) days prior to the anniversary date of its desire to modify or change this Agreement.

IN WITNESS WHEREOF, the parties hereto have affixed their signature this 23rd day of November 2022.

For the Employer
SAN FRANCISCO BASEBALL ASSOCIATES LLC

By. Laurence M. Baer
Laurence M. Baer
President & Chief Executive Officer

For the Union
SERVICE EMPLOYEES INTERNATIONAL UNION, USWW

By: Eugenia Gutierrez
Eugenia Gutierrez
Union Representative

By: [signature]
Alejandra Alonso
Bargaining Committee Member

By: ______________________
Juanita Ynostroza
Bargaining Committee Member

By: ______________________
David Maxie
Bargaining Committee Member

By: ______________________
Carlos Carrillo
Bargaining Committee Member

By: ______________________
David Stamer
Bargaining Committee Member

## EXHIBIT A

### WAGES & PREMIUMS

| Employee Classification | | 2022 | 2023 | 2024 | 2025 | 2026 |
|---|---|---|---|---|---|---|
| | Level 5 | 32.65 | 33.65 | 34.69 | 35.92 | 37.19 |
| | Level 4 | 31.65 | 32.65 | 33.69 | 34.92 | 36.19 |
| | Level 3 | 30.65 | 31.65 | 32.69 | 33.92 | 35.19 |
| | Level 2 | 29.65 | 30.65 | 31.69 | 32.92 | 34.19 |
| Command Center | Level 1 | 28.65 | 29.65 | 30.69 | 31.92 | 33.19 |
| | Level 5 | 29.84 | 30.77 | 31.75 | 32.90 | 34.09 |
| | Level 4 | 29.09 | 30.02 | 31.00 | 32.15 | 33.34 |
| | Level 3 | 28.34 | 29.27 | 30.25 | 31.40 | 32.59 |
| | Level 2 | 27.59 | 28.52 | 29.50 | 30.65 | 31.84 |
| Supervisory | Level 1 | 26.84 | 27.77 | 28.75 | 29.90 | 31.09 |
| | Level 5 | 26.57 | 27.43 | 28.32 | 29.38 | 30.47 |
| | Level 4 | 26.07 | 26.93 | 27.82 | 28.88 | 29.97 |
| | Level 3 | 25.57 | 26.43 | 27.32 | 28.38 | 29.47 |
| | Level 2 | 25.07 | 25.93 | 26.82 | 27.88 | 28.97 |
| Regular Employees | Level 1 | 24.57 | 25.43 | 26.32 | 27.38 | 28.47 |
| S-20 | | | | | | |
| S-19 | | | | | | 28.92 |
| S-18 | | | | | 27.54 | 28.64 |
| S-17 | | | | 26.34 | 27.26 | 28.35 |
| S-16 | | | 25.20 | 26.08 | 26.99 | 28.07 |
| S-15 | | 24.11 | 24.95 | 25.82 | 26.73 | 27.80 |
| S-14 | | 23.87 | 24.70 | 25.57 | 26.46 | 27.52 |
| S-13 | | 23.63 | 24.46 | 25.31 | 26.20 | 27.25 |
| S-12 | | 23.40 | 24.22 | 25.06 | 25.94 | 26.98 |
| S-11 | | 23.17 | 23.98 | 24.82 | 25.68 | 26.71 |
| S-10 | | 22.94 | 23.74 | 24.57 | 25.43 | 26.45 |
| S-9 | | 22.71 | 23.50 | 24.33 | 25.18 | 26.19 |
| S-8 | | 22.48 | 23.27 | 24.09 | 24.93 | 25.93 |
| S-7 | | 22.26 | 23.04 | 23.85 | 24.68 | 25.67 |
| S-6 | | 22.04 | 22.81 | 23.61 | 24.44 | 25.42 |
| S-5 | | 21.82 | 22.59 | 23.38 | 24.20 | 25.16 |
| S-4 | | 21.61 | 22.36 | 23.15 | 23.96 | 24.91 |
| S-3 | | 21.39 | 22.14 | 22.92 | 23.72 | 24.67 |
| S-2 | | 21.18 | 21.92 | 22.69 | 23.48 | 24.42 |
| S-1 | | 20.97 | 21.71 | 22.47 | 23.25 | 24.18 |
| Probationary | | 20.00 | 20.70 | 21.42 | 22.17 | 23.06 |

*Wage Chart Notes: (a) Employer may pay an employee more than what is set forth in the wage chart based on such*

*employee's skill and experience; and (b) all changes in wage rates will be effective on January 1 of each year, except as otherwise specified herein and with regard to Probationary Employees in which case wage rate changes will be effective upon completion of their Probationary period.*

1. Graveyard Shift Premium. Each employee that works the Graveyard Shift shall be entitled to receive One Dollar and Fifty cents ($1.50) per hour more than the hourly wage set-forth in his, her or their applicable classification above ("Graveyard Shift Premium"). The Graveyard Shift is defined as from 12:00AM to 8:00AM. The Employer reserves the right to modify the definition of Graveyard Shift at its discretion (e.g., from 10:00PM to 6:00AM or 11:00PM to 7:00AM). For employees working hours that may overlap with the Graveyard Shift but who are not working the Graveyard Shift in its entirety, the employee shall only receive the Graveyard Shift Premium for those hours during the established Graveyard Shift. For example, an employee currently working from 10:00PM to 6:00PM shall earn the Graveyard Shift Premium for only the hours worked between 12:00AM and 6:00AM and earn the regular wage from the hours of 10:00PM to 12:00AM.

2. Specialty Position Premium. With the exception of Supervisory Employees, any other employee who works as a Gate Coordinator, Home Clubhouse Guard, at the Lincoln 1 Post or dispatch positions (collectively, the "Specialty Positions") shall be entitled to receive One Dollar ($1.00) per hour more than the hourly wage set forth in his, her or their applicable classification above (the Specialty Position Premium"). The Employer shall have the exclusive right to determine the job functions and criteria for Specialty Positions and shall have the exclusive right to determine which individuals shall be scheduled for the Specialty Positions.

3. Post-Season Premium. Employees who work on the day of post-season baseball games (12:00AM to 11:59PM of the day such game is played) shall be entitled to receive premium pay of time and one-quarter (1.25 multiplied by their applicable rate of pay) for all National League Division Series games, time and one-half (1.5 multiplied by his, her or their applicable rate of pay) for all National League Championship Series games and time and three-quarters (1.75 multiplied by his, her or their applicable rate of pay) for all World Series Games ("Post-Season Premium") for the time worked. Employees are not entitled to receive any Post-Season Premium for any Wild Card Playoff Game.

# EXHIBIT B

## REGULAR EMPLOYEE LIST (2022)

**Existing Regular Employees:**
Walter Castro
Alejandra Alonso
David Maxey
Aquarius Abalos
Rene Arevalo
Alexander Luis
Nick Isham
Juanita Ynostroza
Melisa Rivas
David Vallecillo
Rene Gutierrez
Catherine Blair
Roseann Richard
Claudia Jimenez
Joy Kyles
Tiffany Robinson
Teresa Whitewright

**Regular Employee Positions:**
- Nine (9) Full Time Security Guards
- Three (3) Full Time Shift Supervisors
- Eight (8) Full Time Command Center
- Four (4) Full Time positions as designated by Employer

# EXHIBIT C

## SAN FRANCISCO PAID SICK LEAVE ORDINANCE, SAN FRANCISCO ADMINISTRATION CODE SECTION 12W

# Exhibit B

June 5, 2026

VIA ELECTRONIC MAIL

Mrs. Eugenia Gutierrez and Mr. Madison Wise
Allied & Entertainment Division
SEIU United Service Workers West
3411 East 12th Street, #200
Oakland, CA 94601-3425
Email: eugenia.gutierrez@seiu-usww.org; madison.wise@seiu-usww.org

Re: AGREEMENT BETWEEN SEIU-USWW AND SAN FRANCISCO BASEBALL ASSOCIATES LLC

Dear Eugenia and Madison:

San Francisco Baseball Associates LLC (the "Giants" or "Employer"), and Service Employees International Union United Service Workers West ("SEIU-USWW" or the "Union") (collectively, the "Parties") entered into Collective Bargaining Agreements dated August 1, 2018 and November 23, 2022 (the "CBAs").

This Letter Agreement memorializes the Parties' agreement to modify the CBAs and provide consideration to bargaining-unit employees in exchange for the Union's execution of the memorandum of understanding ("MOU"), attached as Exhibit A, which subjects certain claims and disputes to the final and binding grievance and arbitration procedure in Section 14 of the CBAs and is retroactive to April 1, 2021.

The Parties agree as follows:

**1. Execution of MOU**. Concurrently with the execution of this Letter Agreement, the Union agrees to execute the MOU. In the event of conflict between the MOU and Section 14 of the Security CBA, the MOU shall control. The MOU modifies and supplements the CBAs between the Parties, and the Parties expressly agree that the MOU is retroactive to April 1, 2021. The MOU covers all individuals who are or were employed by the Employer and represented by the Union from April 1, 2021, through and including the present, and thereby covered by the 2018 Collective Bargaining Agreement and the 2022 Collective Bargaining Agreement between the Parties.

**2. Employee Consideration Payment**. In consideration of the Union's execution of the MOU, the Employer will pay Eight Hundred Dollars ($800) to each Active Security Bargaining Unit Employee.

> **a.** For purposes of this Letter Agreement, "Active Security Bargaining Unit Employee" means each employee who, as of the date the execution of this Letter Agreement and the MOU, is employed by the Employer in a bargaining-unit position covered by the CBAs and is not terminated, resigned, or otherwise separated from employment.

**b.** The Employer will issue the payment described in this Section 2 as soon as practicable after the full execution of this Letter Agreement and the MOU by the Parties but in no event later than twenty (20) days after the Parties have mutually confirmed the list of Active Security Bargaining Unit Employees eligible to receive the payment.

**c.** The payment will be treated as taxable wages and will be subject to applicable withholdings and deductions required by law. The payment shall be processed separately from the normal payroll process.

**3. Amendment to Section 14 of Security CBA**. In consideration of the Union's execution of the MOU, Section 14 of the 2022 CBA is deleted in its entirety and replaced with the Amended Section 14 attached hereto. This amendment is effective as of the date of full execution of this Letter Agreement.

**4. No Other Changes**. In the event of a conflict between the CBAs and this Letter Agreement and/or the MOU, this Letter Agreement and the MOU shall control.

**5. Authority**. Each individual signing below represents that they have authority to bind the party on whose behalf they sign.

If this letter accurately reflects our agreement, please countersign in the space below and return an executed copy to my attention.

Sincerely,

Amy Tovar (Jun 5, 2026 11:55:22 PDT)

Amy Tovar
Chief Legal Officer
San Francisco Baseball Associates LLC

AGREED AND ACCEPTED:

SERVICE EMPLOYEES INTERNATIONAL UNION
UNITED SERVICE WORKERS WEST

By: ______________________
Name: Madison Wise
Title: Internal Organizer
Date: June 15, 2026

**Amended Section Fourteen**
**Grievance & Arbitration**

A grievance is any dispute between the Employer and an employee or the Union regarding the interpretation, application or alleged violation of any of the terms of this Agreement. Grievances can be brought by either Party and shall be limited to events and occurrences arising during the term of this Agreement or any extension entered into by the Parties hereto.

Grievances involving discharge must be presented in writing to the Employer within ten (10) business days after the employee is discharged. All other grievances must be presented in writing to the other Party to be charged within fifteen (15) business days from the date the incident giving rise to the grievance occurred, or the date facts giving rise to the grievance were discovered or should have been discovered. The written grievance shall specify in detail the facts alleged to give rise to the grievance and shall set forth the applicable section(s) of this Agreement alleged to be violated and the remedy sought for the grievance. Failure to present the grievance within the time and in the manner described shall constitute a waiver of the grievance, unless otherwise agreed upon by the Parties and/or required by law

The Parties shall meet and confer to consider the grievance and determine whether it can be resolved informally within ten (10) days of the date that the grievance is properly submitted ("Informal Mediation Session"). In the event that the Employer and the Union cannot resolve the grievance through the Informal Mediation Session, either Party may request the convening of a Board of Adjustment within two (2) weeks of the date on which the grievance was filed (unless extended by mutual agreement). Such request shall be in writing and shall specify the nature of the grievance. The Board of Adjustment shall consist of two (2) representatives of the Union and two (2) representatives of the Employer. No member of the Union or representative of the Union who was directly involved in, or a party to the dispute, and no Employer representative directly involved in, or a party to the dispute, shall be eligible to serve as a Member of the Board of Adjustment. A decision by a majority of the Board of Adjustment shall be final and binding on all parties. In the event that the Board of Adjustment is unable to reach a decision by majority or unanimous vote on any such matter, such dispute may be referred to an impartial arbitrator whose decision shall be final and binding.

If the Parties cannot resolve the grievance through the processes outlined above, then either Party may, by written notice to the other party, request arbitration of the grievance. Failure to request arbitration within ten (10) business days of the completion of the Board of Adjustment process shall constitute a waiver of the grievance, unless otherwise agreed upon by the Parties and/or required by law. The Parties shall meet to choose an arbitrator within five (5) business days of the date the request for arbitration is made. In the event the Parties are unable to agree upon the selection of an arbitrator, the Party seeking arbitration shall obtain a list of seven (7) names from the Federal Mediation and Conciliation Service, from which the parties shall alternatively strike names. The Party striking first shall be decided by coin toss. The decision of the arbitrator shall be final and binding on the parties and the employees.

The arbitrator shall have no authority to add to, delete or alter any provision of this Agreement. The arbitrator shall have no authority to question the Employer's exercise of discretion in its termination of a Probationary Employee.

The cost of the arbitration and the compensation and expenses of the arbitrator and reporter shall be split evenly by the Parties, unless otherwise stated in this Section or upon further agreement by the Parties or as required by law. Each Party shall bear the expense of presenting its own case.

**EXHIBIT A**

**MEMORANDUM OF UNDERSTANDING**

1. This memorandum of understanding ("MOU") is entered into by San Francisco Baseball Associates LLC (the "Giants" or the "Employer") and the Service Employees International Union United Service Workers West ("SEIU - USWW" or the "Union") (collectively referred to as the "Parties"). This MOU modifies and supplements the Collective Bargaining Agreements between the Parties. "Collective Bargaining Agreements" herein refers to all iterations of the collective bargaining agreements between the Parties that are or were in effect on or after the Effective Date.

2. The "Effective Date" of this MOU is April 1, 2021. In other words, the Parties expressly agree that this MOU is retroactive to the Effective Date.

3. This MOU covers all individuals who are or were employed by the Employer and represented by the Union from the Effective Date through, and including, the present and thereby covered by the 2018 Collective Bargaining Agreement between the Parties and the 2022 Collective Bargaining Agreement between the Parties (hereinafter, "Covered Employees").

4. This MOU will be effective through and including the expiration date of the 2022 – 2026 Collective Bargaining Agreement. Thereafter, this MOU will remain effective during negotiations for a successor Collective Bargaining Agreement and during any extensions of the term of the 2022 – 2026 Collective Bargaining Agreement. This MOU will no longer be in effect upon the effective date of the successor Collective Bargaining Agreement except as agreed upon by the Parties.

5. The Parties agree that all claims or disputes involving alleged violations of the Industrial Welfare Commission Wage Order 10, all provisions of the California Labor Code related to the payment of wages or reimbursement of expenses (including, but not limited to, Labor Code Sections 201-204, 212-213, 221-224, 226, 226.7, 245-246.5, 510, 511, 512, 551-557, 1174, 1194, 1194.2, 1197, 1197.5, 1198, 1199, and 2802), and the Fair Labor Standards Act, and all derivative claims under Cal. Business & Professions Code section 17200, et. seq. (collectively, "Covered Claims"), shall be subject to the final and binding grievance and arbitration procedure in Section 14 of the Collective Bargaining Agreements, and not in front of a court or jury. All Covered Claims may be initiated within the same time period that a claim could be initiated in court for such claim, *e.g.*, a three-year limitations period would apply to a minimum wage claim under Labor Code Section 1194. Further, as to Covered Claims, all such claims or disputes shall be brought on behalf of the employee in their individual capacity only and not as a member of any purported class, collective or representative proceeding, and the Arbitrator shall not have the authority to fashion a proceeding as a class, collective or representative action or to award relief to a group or class of employees in one arbitration proceeding. The Union may bring an all-affected grievance with respect to Covered Claims for processing at the steps prior to arbitration. The Union's demand for arbitration may also come in the form of one demand that references the multiple individual cases that will, unless the parties agree to consolidation, will be heard on an individual basis. Nothing herein shall

prohibit the Parties from entering into an agreement to consolidate one or more individual grievances, raising Covered Claims, before the Arbitrator for hearing.

6. To the maximum extent allowed by law, *i.e.*, unless a binding court decision holds otherwise, claims under the California Labor Code Private Attorneys General Act ("PAGA") are also "Covered Claims" under, and subject to, Section 5 of this MOU (and the arbitrator shall be authorized to award any and all remedies available to an Employee in their individual capacity otherwise available by law). The Parties agree to arbitrate PAGA claims on an individual basis only. In addition, where an individual covered by this Agreement seeks relief under PAGA, any underlying arbitrable claim that an employer violated the California Labor Code (for example, and without limitation, by underpaying wages, by failing to provide meal or rest breaks, by failing to provide compliant wage statements, or by failing to timely pay wages or final wages), such claim(s) must proceed first through the individual grievance and arbitration procedure specified in Section 5 of this MOU and before any non-arbitrable related or derivative claim for PAGA penalties proceeds in court. If an Employee brings a representative PAGA claim in court, the representative claim shall be stayed pending completion of arbitration on the individual component of the Employee's claim to determine if the Employee was aggrieved and has standing to pursue any non-arbitrable derivative claim for PAGA representative penalties in court. A PAGA claim is "non-arbitrable" if a binding court decision has determined that the PAGA claim (or portion thereof) cannot proceed under the process specified in Section 5 of this MOU. This MOU supersedes the language in Section 14 of the 2022 – 2026 Collective Bargaining Agreement related to the arbitration of PAGA and Statutory Claims.

7. All grievances shall be brought by the Union. All such grievances shall be initiated and processed by the Union in accordance with the grievance and arbitration procedures in Section 14 of the Collective Bargaining Agreements, as supplemented by this MOU. Employees seeking to bring or pursue a grievance must do so through the Union. Employees (by and through the Union) shall be provided all substantive rights and remedies available as well as all statute of limitations period(s) under applicable law.

   If the Union does not either (i) settled a Covered Claim with the Employer or (ii) take a Covered Claim to arbitration as set forth in this MOU, the following provisions and procedures shall apply:

   a) The Covered Claim may be pursued by the Covered Employee, on an individual basis, and not on a group, collective, class or representative basis.

   b) The Covered Claim may be brought to arbitration by the Covered Employee filing an arbitration demand with the American Arbitration Association under the AAA Employment Arbitration Rules.

   c) The Employer shall bear all costs unique to arbitration with the AAA.

   d) The Arbitrator shall not have the authority to fashion a proceeding as a class, representative, or collective action or to award relief to a group or class of employees in any arbitration regarding Covered Claims.

8. This MOU shall apply retroactively to any Covered Claims that arose or were already pending from the Effective Date, including any lawsuits and/or administrative actions currently pending.

San Francisco Baseball Associates LLC

By: Amy Tovar (Jun 5, 2026 11:55:22 PDT)

Name: Amy Tovar

Date: June 5, 2026

Service Employees International Union United Service Workers West

By:

Name: Madison Wise

Date: 6/15/2026