John C. Fish, Jr., Bar No. 160620
jfish@littler.com
Courtney Chambers, Bar No. 312011
cchambers@littler.com
Emily Mertes, Bar No. 296743
emertes@littler.com
Fernanda Gonzalez, Bar No, 358941
fgonzalez@littler.com
LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, California 94105
Telephone: 415.433.1940
Facsimile: 415.399.8490

Attorneys for Defendants
SAN FRANCISCO BASEBALL ASSOCIATES LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY MALLEK, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SAN FRANCISCO BASEBALL ASSOCIATES LLC, a Delaware Limited Liability Company, and DOES 1-50, inclusive,<br><br>Defendants. | Case No.<br><br>**DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT**<br><br>Trial Date: None Set<br>Complaint Filed: August 10, 2026 |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, PLAINTIFF, AND HIS ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1331, 1441(a) and 1446, Defendant SAN FRANCISCO BASEBALL ASSOCIATES LLC ("Defendant" or "SFBA") hereby removes the above-captioned action from the Superior Court for the State of California, in and for the County of San Francisco to the United States District Court, Northern District of California.

Removal is proper based on 29 U.S.C. § 185(a). This action is removed pursuant to the procedures found in 28 U.S.C. §§ 1441 and 1446, and removal jurisdiction is based on 28 U.S.C. § 1331. Pursuant to 28 U.S.C. § 1446(d), Defendant will also file a copy of this Notice of Removal with the San Francisco Superior Court.

## I. PROCEDURAL BACKGROUND

On August 10, 2026, the Superior Court of the State of California, County of San Francisco's Docket in this matter indicates that Plaintiff Barry Mallek ("Plaintiff") filed a Civil Case Cover sheet and Complaint in the Superior Court of the State of California, County of San Francisco, which is captioned as follows: *Barry Mallek, on behalf of himself and all others similarly situated v. San Francisco Baseball Associates LLC, and Does 1 through 50, inclusive*, Case No. CGC-26-639813. ("Complaint" or "Compl.") The Complaint contains nine (9) causes of action alleging: (1) Failure to Pay All Minimum Wages; (2) Failure to Pay All Overtime Wages; (3) Meal Period Violations; (4) Rest Period Violations; (5) Failure to Pay All Sick Time; (6) Wage Statement Violations; (7) Waiting Time Penalties; (8) Failure to Reimburse Necessary Business Expenses; and (9) Unfair Competition. (Declaration of Emily Mertes ["Mertes Decl."], ¶ 2.)

On August 10, 2026, the Superior Court of the State of California, County of San Francisco's Docket in this matter indicates the Court issued a Notice to Plaintiff. (Id., ¶ 3.)

On August 12, 2026, the Superior Court of the State of California, County of San Francisco's Docket in this matter indicates the Court issued a Summons to Plaintiff. (Id., ¶ 4.)

On August 14, 2026, Defendant was served with the Complaint, along with a copy of the Summons on Complaint, Civil Case Cover sheet, Notice to Plaintiff of Case Management Conference, Voluntary Expedited Jury Trial Summary Information Sheet, and Complaint. (Id., ¶ 5.)

On August 17, 2026, the Superior Court of the State of California, County of San Francisco's Docket in this matter indicates that Plaintiff filed a Summons and Proof of Service. True and correct copies of the Summons, Civil Case Cover Sheet, Complaint, Notice to Plaintiff, and Proof(s) of Service are attached to the supporting Mertes Decl. as **Exhibit 1**.

On August 19, 2026, the Superior Court of the State of California, County of San Francisco's Docket in this matter indicates that Plaintiff filed an Application for Approval of Complex Litigation Designation. A true and correct copy of the Application and accompanying Proof of Service is attached to the Mertes Decl. as **Exhibit 2**.

On September 11, 2026, contemporaneously with the filing of the Removal, Defendant filed an Answer to the Complaint in the Superior Court of the State of California, County of San Francisco. A true and correct copy of Defendant's Answer and accompanying Proof of Service is attached to the Mertes Decl. as **Exhibit 3**.

As of the date of this Notice of Removal, no other parties have been named or served with the Summons and Complaint, to Defendant's knowledge. (Mertes Decl., ¶ 9.)

## II. REMOVAL JURISDICTION

This Court has jurisdiction because a federal question exists under Section 301 of the Labor Management Relations Act ("LMRA"), which provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this [Act], or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a) (hereinafter "Section 301").

Section 301 preemption and jurisdiction apply because the Complaint includes claims that can only be brought as contractual claims under the applicable collective bargaining agreement ("CBA") due to the application of several express CBA exemptions in the California Labor Code and Industrial Welfare Commission ("IWC") Wage Order 10. Section 301 also applies because Plaintiff asserts he is entitled to relief that is controlled by the CBA and makes claims the resolution of which require interpretation of the CBA.

If any claims in the Complaint are not preempted, the entire action is still removable under 28

U.S.C. § 1441(c) because this Court has supplemental jurisdiction under 28 U.S.C. § 1367. All claims in the Complaint are sufficiently related to form part of the same case or controversy.

## III. REMOVAL PROCEDURE

### A. Venue Is Proper in This District.

Plaintiff filed this action in the Superior Court of California, County of San Francisco. Therefore, pursuant to 28 U.S.C. §§ 84(a), 1391, and 1441(a), venue properly lies in the United States District Court for the Northern District of California.

### B. This Removal Is Timely.

28 U.S.C. § 1446(b) provides two 30-day windows for removing a case. Section 1446(b)(1) specifies that a defendant must remove "within 30 days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). If, however, "the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

Here, removal of this action is timely because this Notice of Removal has been filed within 30 days from August 14, 2026, when Defendants were served with the Complaint. 28 U.S.C. § 1446(b).

### C. The Failure To Reference The CBA, The LMRA, Or The Union Does Not Preclude Removal Because Plaintiff May Not "Artfully Plead" A Complaint To Conceal Its True Nature.

The failure of Plaintiff's operative pleading to reference the CBA, the Union, or the LMRA is not relevant to the Section 301 preemption analysis. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019); *Radcliff v. San Diego Gas & Elec. Co.*, 519 F.Supp.3d 743, 750 (S.D. Cal. 2021); *Mellon v. Universal City Studios, LLC*, 2022 WL 4021692, 2 (C.D. Cal. Sept. 2, 2022); *Ayon v. Zero Waste Sols., Inc.*, 2021 WL 4065716, 3 (E.D. Cal. Sept. 7, 2021). A plaintiff may not be permitted to "artfully plead" a complaint to conceal its true nature. *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) (holding that plaintiff's state law claim was preempted even though operative complaint made no mention of a collective bargaining agreement); *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189,

191 (9th Cir. 1983), overruled in part on other grounds in *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241 (9th Cir. 2009); *IBEW v. Hechler*, 481 U.S. 851 (1987) (state law tort action "treated as Section 301 claim" by the Court); *Hyles v. Mensing*, 849 F. 2d 1213, 1217 (9th Cir. 1988) (preemption affirmed notwithstanding plaintiff's artful omission of references to preemptive federal law); *Olguin v. Inspiration Consol. Copper Co.*,740 F.2d 1468, 1472-74 (9th Cir. 1984) (preemption affirmed despite attempt to plead around federal jurisdiction); *see Milne Emp. Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401, 1406 (9th Cir. 1991).

The Court may properly look beyond the face of the Complaint to determine whether the claims asserted are in fact preempted by Section 301. *See Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003). Additionally, the Court may properly look to the facts stated in the Notice of Removal "to clarify the action a plaintiff presents and to determine if it encompasses an action within federal jurisdiction." *Schroeder*, 702 F.2d at 191.

An artfully pled state law claim is properly "recharacterized" as a federal claim under the "complete preemption" doctrine, which provides that the preemptive force of Section 301 "converts an ordinary state law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule" and is removable to federal court. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). "A claim pleaded under state law that requires the interpretation of a collective bargaining agreement is transformed by section 301 of the LMRA into a claim arising under federal law." *Risetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597 (9th Cir. 1996).

**D. The Parties, The Union, And The Relevant Collective Bargaining Agreement.**

SFBA is an employer engaged in an industry affecting commerce within the meaning of the National Labor Relations Act (the "NLRA"). 29 U.S.C. §§ 152(2), (6), (7), and 185(a). The Service Employees International Union, United Service Workers West ("USWW") (the "Union") is a labor organization under the NLRA and the LMRA. 29 U.S.C. §§ 152(5) and 185(a). At relevant times, SFBA and the Union have been parties to a collective bargaining agreement ("CBA"). A true and correct copy of the CBA in effect during Plaintiff's employment and applicable at all times to Plaintiff's employment is attached to the Declaration of Lan Lee ("Lee Decl.") as **Exhibit A** ("Exh. A"). (*See also* Defendant's Request for Judicial Notice ("RJN") at ¶ 1.) The CBA is effective through December 31, 2026. (Lee Decl.,

¶ 5.) On or about June 5, 2026, SFBA and the Union entered into a Memorandum of Understanding ("MOU") whereby the parties agreed to amend Section 14 of the CBA. A true and correct copy of the MOU ("2026 MOU") is attached to the Lee Decl. as **Exhibit B** ("Exh. B").[1] (*See also* Defendant's RJN at ¶ 2.)

At all times during his employment, Plaintiff was a union-represented employee and part of the bargaining unit represented by the Union and, therefore, subject to the CBA. (*Id.* at ¶ 4.)

All wage rates, for all job classifications, are set forth in the CBA, in a wage grid at page 19. (Lee Decl., **Exh. A**.)

## IV. FACTUAL BACKGROUND

### A. Plaintiff's Employment.

SFBA has employed Plaintiff as a Security Guard from September 28, 2021, through the date of this Removal.[2] (Lee Decl., ¶ 4.) In this position, Plaintiff was classified within the USSW-represented unit, and his employment was governed by the CBA. (Lee Decl., ¶ 4.) In his role as a Security Guard, Plaintiff's base wage as of August 14, 2022 under the CBA was $20.97. (*Id.* at ¶ 7.) Plaintiff's base wage rate at the time of his termination under the CBA was $25.16. (*Id.* at ¶ 7.) At all times, Plaintiff's wage rate under the CBA was in excess of 130% of the California minimum wage.

### B. Relevant Collective Bargaining Agreement Provisions.

The term of the CBA that was in effect during all relevant times during Plaintiff's employment was from January 1, 2022, to December 31, 2026. (Lee Decl., ¶ 5.) The provisions of the CBA relevant to this Removal include the following:

[1] Sideletters, grievance settlements, and any other agreement between employer and union, are themselves collective bargaining agreements under the law. *Inlandboatmens Union of the Pacific v. Dutra Group dba Dutra Construction Co. Inc*. (9th Cir. 2002) 279 F.3d 1075, 1079; *Allmaras v. Univ. Mech. & Eng'g Contractors, Inc.* (S.D. Cal. Feb. 11, 2025, No. 24-CV-02021-GPC-SBC) 2025 WL 454713, *5. Any collective bargaining agreement, including any sideletter agreement or MOU, can be retroactive, if the employer and union simply state that the agreement is retroactive. *Oswald v. Murray Plumbing and Heating Corp.* (2022) 82 Cal.App.5th 938, 944-945. *See also Franco v. Greystone Ridge Condominium* (2019) 39 Cal.App.5th 221, 228–230; *Salgado v. Carrows Restaurants, Inc.* (2019) 33 Cal.App.5th 356, 358–362.

[2] On or about June 28, 2026, Plaintiff requested and was granted leave. Plaintiff remains on leave as of the date of this Removal.

**1. Wage Rates.**

The following are relevant to show that the CBA provides for 130% of minimum wages, and that Plaintiff's overtime claim is subject to the exemption under Labor Code section 514 and preempted by the CBA:

> **Section Nine - Wages**
> The minimum hourly rates of pay which shall pertain during the term of this Agreement are set forth by classification in Exhibit A hereto. The rates for Part-Time Employees are subject to annual adjustment based upon an employee achieving or failing to achieve certain thresholds of work commitment. All Part-Time Employees are required to work a minimum of thirty-one (31) FVEs each calendar year.

(Lee Decl., **Exh. A**, pp. 10-11.)

> **Exhibit A – Wages and Premiums** [Listing Security Guard wages ranging from $20.00 to $32.65 - effective January 1, 2022 and listing futures increases on January 1, 2023, January 1, 2024, January 1, 2025, and January 1, 2026.]

(Lee Decl., **Exh. A**, pp. 19-20.)

At all relevant times, SFBA employees represented by the Union, and therefore whose employment was governed by the CBA, were subject to the wage scales applicable to Security Guards in the CBA that were at all relevant times greater than 130% of the relevant minimum wage:

| Year | Minimum Wage[3] | 130% of minimum wage | CBA lowest hourly wage rate |
|---|---|---|---|
| 2022 | $15.00 | $19.50 | $20.00 |
| 2023 | $15.50 | $20.15 | $20.70 |
| 2024 | $16.00 | $20.80 | $21.42 |
| 2025 | $16.50 | $21.45 | $22.17 |
| 2026 | $16.90 | $21.97 | $23.06 |

(Lee Decl., ¶ 8, **Exh. A** pp. 19-20.)

**2. Overtime.**

The CBA specifically calls for overtime premiums:

> **Section Eight - Hours**
> Any work performed in excess of eight (8) hours per day or forty (40) hours per week shall be paid at the rate of time and one-half (1½).

(Lee Decl., **Exh. A**, pp. 9-10.)

[3] For 26 or more employees. (*See* RJN [listing minimum wage rates].)

**3. Working Hours.**

The CBA specifically calls for working hours:

**Section Eight - Hours**

The Employer retains the right to establish what shall constitute a normal workday and to schedule employees at its discretion, provided that if the Employer reduces the number of employees typically used for FVEs such that Part-Time Employees classified at Class 6 through 20 are unable to schedule on a regular basis, the Employer and the Union will meet and confer to discuss the possibility of introducing a seniority based priority scheduling system. Notwithstanding the above, any employee required to work less than four (4) hours shall receive a minimum of four (4) hours pay, except that there shall be no minimum hour requirement with respect to California Guard Card or California PSO Card training, as applicable, or online training performed by an employee. Employees participating in online training will be paid for the reasonable amount of time necessary to complete the required training. Regular Employees required to work less than six (6) hours shall receive a minimum of six (6) hours pay; provided, however, that they shall receive only four (4) hours pay if the work shift is shortened due to the cancellation of a game (i.e., rain, natural disaster, civil unrest) or if the work shift occurs during a strike, lockout or other work stoppage involving the Major League Baseball Players Association, and provided, further, that no minimum hour requirement shall apply with respect to California Guard Card or California PSO Card training or other training performed by an employee online. Employees shall be entitled to rest ·breaks as required by law. On a case by case basis, the Employer may, in its discretion, provide employees with disabilities travel time accommodations to and from lunch or a rest break. There is no guarantee for greater than a four (4) hour shift. Sunday through Saturday shall constitute a work week…

(Lee Decl., **Exh. A**, pp. 9-10.)

**4. Grievance and Arbitration.**

The CBA calls for claims to proceed under its own grievance and arbitration provision:

**Amended Section Fourteen - Grievance & Arbitration**

A grievance is any dispute between the Employer and an employee or the Union, regarding the interpretation, application, or alleged violation of any of the terms of this Agreement. Grievances can be brought by either Party and shall be limited to events and occurrences arising during the term of this Agreement or any extension entered into by the Parties hereto.

[…]

If the Parties cannot resolve the grievance through the processes outlined above, then either Party may, by written notice to the other party, request arbitration of the grievance. Failure to request arbitration within ten (10) business days of the completion of the Board of Adjustment process shall constitute a waiver of the grievance, unless otherwise agreed upon by the Parties and/or required by law. The Parties shall meet to choose an arbitrator within five (5) business days of the date the request for arbitration is made. In the event the Parties are unable to agree upon the selection of an arbitrator, the Party seeking arbitration shall obtain a list of seven (7) names from the Federal Mediation and Conciliation Service, from which the parties shall alternatively strike names. The Party striking first shall be decided by coin toss. The decision of the arbitrator shall be

final and binding on the parties and the employees.

[…]

The cost of the arbitration and the compensation and expenses of the arbitrator shall be borne by the losing party. If there is a dispute as to which party constitutes the losing party for purposes of this section, the matter shall be decided by the arbitrator. Each party shall bear the expense of presenting its own case.

[…]

5. The Parties agree that all claims or disputes involving alleged violations of the Industrial Welfare Commission Wage Order 10, all provisions of the California Labor Code related to the payment of wages or reimbursement of expenses (including, but not limited to, Labor Code Sections 201-204, 212-213, 221-224, 226, 226.7, 245-246.5, 510, 511, 512, 551-557, 1174, 1194, 1194.2, 1197, 1197.5, 1198, 1199, and 2802), and the Fair Labor Standards Act, and all derivative claims under Cal. Business & Professions Code section 17200, et. seq. (collectively, "Covered Claims"), shall be subject to the final and binding grievance and arbitration procedure in Section 14 of the Collective Bargaining Agreements, and not in front of a court or jury. All Covered Claims may be initiated within the same time period that a claim could be initiated in court for such claim, e.g., a three-year limitations period would apply to a minimum wage claim under Labor Code Section 1194. Further, as to Covered Claims, all such claims or disputes shall be brought on behalf of the employee in their individual capacity only and not as a member of any purported class, collective or representative proceeding, and the Arbitrator shall not have the authority to fashion a proceeding as a class, collective or representative action or to award relief to a group or class of employees in one arbitration proceeding. The Union may bring an all-affected grievance with respect to Covered Claims for processing at the steps prior to arbitration. The Union's demand for arbitration may also come in the form of one demand that references the multiple individual cases that will, unless the parties agree to consolidation, will be heard on an individual basis. Nothing herein shall prohibit the Parties from entering into an agreement to consolidate one or more individual grievances, raising Covered Claims, before the Arbitrator for hearing.

6. To the maximum extent allowed by law, i.e., unless a binding court decision holds otherwise, claims under the California Labor Code Private Attorneys General Act ("PAGA") are also "Covered Claims" under, and subject to, Section 5 of this MOU (and the arbitrator shall be authorized to award any and all remedies available to an Employee in their individual capacity otherwise available by law). The Parties agree to arbitrate PAGA claims on an individual basis only. In addition, where an individual covered by this Agreement seeks relief under PAGA, any underlying arbitrable claim that an employer violated the California Labor Code (for example, and without limitation, by underpaying wages, by failing to provide meal or rest breaks, by failing to provide compliant wage statements, or by failing to timely pay wages or final wages), such claim(s) must proceed first through the individual grievance and arbitration procedure specified in Section 5 of this MOU and before any non-arbitrable related or derivative claim for PAGA penalties proceeds in court. If an Employee brings a representative PAGA claim in court, the representative claim shall be stayed pending completion of arbitration on the individual component of the Employee's claim to determine if the Employee was aggrieved and has standing to pursue any non-arbitrable derivative claim for PAGA representative penalties in court. A PAGA claim is "non-arbitrable" if a binding court decision has determined that the PAGA claim (or portion

thereof) cannot proceed under the process specified in Section 5 of this MOU. This MOU supersedes the language in Section 14 of the 2022 - 2026 Collective Bargaining Agreement related to the arbitration of PAGA and Statutory Claims.

7. All grievances shall be brought by the Union. All such grievances shall be initiated and processed by the Union in accordance with the grievance and arbitration procedures in Section 14 of the Collective Bargaining Agreements, as supplemented by this MOU. Employees seeking to bring or pursue a grievance must do so through the Union. Employees (by and through the Union) shall be provided all substantive rights and remedies available as well as all statute of limitations period(s) under applicable law.

If the Union does not either (i) settled a Covered Claim with the Employer or (ii) take a Covered Claim to arbitration as set forth in this MOU, the following provisions and procedures shall apply:

a) The Covered Claim may be pursued by the Covered Employee, on an individual basis, and not on a group, collective, class or representative basis.

b) The Covered Claim may be brought to arbitration by the Covered Employee filing an arbitration demand with the American Arbitration Association under the AAA Employment Arbitration Rules.

c) The Employer shall bear all costs unique to arbitration with the AAA.

d) The Arbitrator shall not have the authority to fashion a proceeding as a class, representative, or collective action or to award relief to a group or class of employees in any arbitration regarding Covered Claims.

(Lee Decl., **Exh. B**.)

**5. Sick Leave**

The CBA provides for sick leave, which is relevant to Plaintiff's fifth cause of action for failure to pay all sick time, among others:

**Section 10 – Sick Leave, Maternity Leave, Jury Duty, and Bereavement Leave**
This Agreement shall operate to waive all provisions of the California Healthy Workplace Healthy Family Act of 2014 (AB 1522), and shall supersede and be considered to have fulfilled all requirements of the law as presently written, and/or amended during the life of this Agreement. This waiver of the California Healthy Workplace Healthy Family Act of 2014 was agreed to by the Union in exchange for providing premium wages at, or in excess of, 130% of the California Minimum Wage requirements, requiring final and binding arbitration of disputes concerning the application of the paid sick days provisions, and providing an alternative income protection program in the form of paid sick leave by the Employer.

This Agreement shall also operate to waive any provisions of the San Francisco Paid Sick Leave Ordinance, San Francisco Administration Code Section 12W, provided that, except with respect to Probationary Employees, Employer shall provide paid sick leave benefits to Non-Probationary Regular Employees and Part-Time Employees in accordance with the provisions of the San

Francisco Paid Sick Leave Ordinance, San Francisco Administration Code Section 12W, attached hereto as Exhibit C and incorporated by reference, including, but not limited to, paid sick leave accrual of one hour of paid sick leave per every 30 hours worked. Probationary Employees shall not be entitled to accrue paid sick leave until the completion of their applicable probationary period. Upon completion of such probationary period, such employee shall be entitled to paid leave sick benefits in accordance with the San Francisco Paid Sick Leave Ordinance. This waiver of the San Francisco Paid Sick Leave Ordinance was agreed to by the Union in exchange for good and valuable consideration by the Employer. Notwithstanding anything to the contrary, each employee using paid sick leave will be paid at his, her or their standard rate of pay for such time regardless of the position for which they were scheduled to work (e.g. a Part-Time Employee Class 5 scheduled to work a Supervisory Employee's shift will be paid at the Class 5 rate). The Employer may require a doctor's ce1iificate or other reasonable proof of illness from an employee after his, her or their third consecutive day of sick leave. Such sick leave with pay shall be paid in the following manner: Regular Employees shall be reimbursed for the actual am0tmt of hours scheduled for each day lost, but not to exceed eight (8) hours, and all other Employees shall be reimbursed for the actual amount of hours scheduled, but not to exceed eight (8) hours or be less than six ( 6) hours for each day lost. Employees remain entitled to request sick leave whenever applicable even if an employee does not have paid sick leave accrued. An employee's paid sick leave accrual shall carry-over from year to year as long as the employee remains employed with the Giants.

(Lee Decl**., Exh. A**, pp. 11-12.)

**6. Non-Exhaustive List Of CBA Provisions Governing Other Terms And Conditions of Employment.**

The CBA provides for guaranteed pay, show up pay, and expenses, which are relevant to Plaintiff's minimum wage, seventh day rest, and unreimbursed expense claims, among others:

**Section Eight - Hours**

The Employer retains the right to establish what shall constitute a normal workday and to schedule employees at its discretion, provided that if the Employer reduces the number of employees typically used for FVEs such that Part-Time Employees classified at Class 6 through 20 are unable to schedule on a regular basis, the Employer and the Union will meet and confer to discuss the possibility of introducing a seniority based priority scheduling system. Notwithstanding the above, any employee required to work less than four (4) hours shall receive a minimum of four (4) hours pay, except that there shall be no minimum hour requirement with respect to California Guard Card or California PSO Card training, as applicable, or online training performed by an employee. Employees participating in online training will be paid for the reasonable amount of time necessary to complete the required training. Regular Employees required to work less than six (6) hours shall receive a minimum of six (6) hours pay; provided, however, that they shall receive only four (4) hours pay if the work shift is shortened due to the cancellation of a game (i.e., rain, natural disaster, civil unrest) or if the work shift occurs during a strike, lockout or other work stoppage involving the Major League Baseball Players Association, and provided, further, that no minimum hour requirement shall apply with respect to California Guard Card or California PSO Card training or other training performed by an employee online. Employees shall be entitled to rest ·breaks as required by law. On a case by case basis, the Employer may, in its discretion, provide employees with disabilities travel time accommodations to and from lunch or a rest break. There is no

guarantee for greater than a four (4) hour shift. Sunday through Saturday shall constitute a work week.

(Lee Decl**., Exh. A**, pp. 9-10.)

**Section Nine - Wages**

If any employee is required or instructed to wear a uniform or any specifically designated article of clothing or footwear (other than standard street shoes), the Employer shall be responsible for furnishing them to the employee. The employee is responsible for maintaining all furnished apparel in a satisfactory condition and may be required to pay a refundable deposit of Seventy Five Dollars ($75.00). The Employer agrees to comply with all applicable laws, if any, with respect to cleaning furnished apparel. Employees may be required to perform work outside of the normal duties and responsibilities of security personnel at the discretion of the Employer from time to time in situations involving an emergency or in the case of an infrequent event. Employer shall exercise reasonable efforts to provide employees with discount parking options when coming to work at the Ballpark.

(Lee Decl., **Exh. A**, pp. 10-11.)

**Section Four - Qualification for Employment**

All Regular and Supervisory Employees shall be required to obtain and maintain a valid "California Guard Card" and thereafter maintain a valid California Guard Card (the "California Guard Card Requirement")…

[…]

The Employer shall pay or reimburse employees for the costs of such employee's application fee, enrollment in a California Guard Card or California PSO Card course, as applicable, and the required background check. The Employer will also pay each employee his, her or their standard rate of pay for the required hours spent by that employee in training and taking the exam. The Employer will offer a California Guard Card or California PSO Card course, as applicable and/or designate a particular California Guard Card or California PSO Card course or courses for employees to enroll to satisfy this requirement. Employees may satisfy the California Guard Card Requirement or the California PSO Requirement by taking any course, but will not be eligible for reimbursement of the costs unless they are enrolled in a course specifically authorized by the Employer.

(Lee Decl., **Exh. A**, pp. 5-7.)

**Exhibit A – Wages and Premiums**

1. <u>Graveyard Shift Premium</u>. Each employee that works the Graveyard Shift shall be entitled to receive One Dollar and Fifty cents ($1.50) per hour more than the hourly wage set forth in his, her or their applicable classification above ("Graveyard Shift Premium"). The Graveyard Shift is defined as from 12:00AM to 8:00AM. The Employer reserves the right to modify the definition of Graveyard Shift at its discretion (e.g., from 10:00PM to 6:00AM or 11:00PM to 7:00AM). For employees working hours that may overlap with the Graveyard Shift but who are not working the Graveyard Shift in its entirety, the employee shall only receive the Graveyard Shift Premium for those hours during the established Graveyard Shift. For example, an employee currently working

> from 10:00PM to 6:00PM shall earn the Graveyard Shift Premium for only the hours worked between 12:00AM and 6:00AM and earn the regular wage from the hours of 10:00PM to 12:00AM.
>
> 2. Specialty Position Premium. With the exception of Supervisory Employees, any other employee who works as a Gate Coordinator, Home Clubhouse Guard, at the Lincoln 1 Post or dispatch positions (collectively, the "Specialty Positions") shall be entitled to receive One Dollar ($1.00) per hour more than the hourly wage set forth in his, her or their applicable classification above (the Specialty Position Premium"). The Employer shall have the exclusive right to determine the job functions and criteria for Specialty Positions and shall have the exclusive right to determine which individuals shall be scheduled for the Specialty Positions.
>
> 3. Post-Season Premium. Employees who work on the day of post-season baseball games (12:00AM to 11:59PM of the day such game is played) shall be entitled to receive premium pay of time and one-quarter (1.25 multiplied by their applicable rate of pay) for all National League Division Series games, time and one-half (1.5 multiplied by his, her or their applicable rate of pay) for all National League Championship Series games and time and three-quarters (1.75 multiplied ] by his, her or their applicable rate of pay) for all World Series Games ("Post-Season Premium") for the time worked. Employees are not entitled to receive any Post-Season Premium for any Wild Card Playoff Game.

(Lee Decl., **Exh. A**, pp. 19-20.)

This is a non-exhaustive list of the CBA provisions that create and/or govern the rights and privileges that Plaintiff has placed at issue in the Complaint. One could review every job classification, and every calendar year, in the wage appendix to the CBA (Lee Decl., at **Exh. A** at pp. 19), and it is apparent that all contractual rates of pay are in excess of 130% of the California minimum wage each year. Accordingly, Plaintiff's claims are subject to Labor Code exemption and interpretation and, thus, preemption under the LMRA applies to create federal question jurisdiction allowing for removal here.

## V. LEGAL DISCUSSION

Plaintiff pleads nine causes of action, all styled as state law claims involving violations of wage and hour provisions of the California Labor Code, and Unfair Competition Law ("UCL"). Plaintiff's overtime and seventh day of rest claims are preempted under Section 301 because such claims are necessarily contractual claims under the CBA as California state law does not apply to such claims because of an express exemption in the Labor Code. Plaintiff's derivative claims (for penalties for failure to pay all wages under Labor Code Section 204 and 210, waiting time penalties under Labor Code Section 203, inaccurate wage statements, and restitution under the UCL) are preempted under Section 301 because such claims rise or fall based on the underlying substantive (and preempted) claims. Plaintiff's minimum

wage and unreimbursed expense claims are also preempted by Section 301 because the resolution of such claims requires interpretation of the CBA; or, in the alternative, because the Court has supplemental jurisdiction over these claims, which form part of the same case or controversy as Plaintiff's preempted claims. Thus, this action is preempted by Section 301.

**A. The Section 301 Preemption Analysis – Legal Standard.**

Section 301 completely preempts all claims that are based on, or require the interpretation of, a collective bargaining agreement. *United Steelworkers of America v. Rawson*, 495 U.S. 362, 368–69 (1990); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209–11 (1985); *Associated Builders & Contractors, Inc. v. Local 302 International Brotherhood of Electrical Workers*, 109 F.3d 1353, 1356–57 (9th Cir. 1997) (Section 301 is construed "quite broadly to cover most state-law actions that require interpretation of labor agreements").

Section 301 preemption furthers two important federal policies. First, it ensures that the interpretation of collective bargaining agreements remains uniform and independent of state law. *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962) (inconsistent interpretations would "inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements"). Second, the complete preemption doctrine gives effect to the parties' mutual promise to resolve disputes through the grievance-arbitration process and furthers the strong federal policy that labor disputes "remain[] firmly in the arbitral realm." *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 411 (1988). This Court has subject matter jurisdiction over—and thus a defendant may properly remove—any ostensible state law claim preempted by Section 301. *Franchise Tax Board v. Construction Laborers*, 463 U.S. 1, 24 (1983); *Allis-Chalmers Corp.*, 471 U.S. at 220 (if preempted, the "claim must either be treated as a § 301 claim ... or dismissed").

Step One. Under the Section 301 preemption analysis, courts must first inquire whether the relief requested by a plaintiff "involves a right [that] exists solely as a result of the CBA." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) (internal citations and quotations omitted). Under *Curtis*, where an asserted Labor Code or Wage Order claim is covered by an available CBA exemption – such that there exists no valid underlying state law claim – the Section 301 preemption inquiry is resolved at this first step. This is because, in the case of a state law meal break claim (for example), if Labor Code Section

512(a) does not apply (due to the application of the Labor Code Section 512(e)-(g) CBA exemption), any pleaded meal break claim is necessarily a contractual claim. *See, e.g., Giles v. Canus Corp.*, 2022 WL 3370793, *4-5 (N.D. Cal. Aug. 16, 2022) (applying *Curtis*).

Step Two. If, and only if, there is no preemption found at the first step of the analysis, courts proceed to the second step of the Section 301 preemption analysis, which asks "whether a plaintiff's state law right is substantially dependent on analysis of the CBA." *Curtis*, 913 F.3d at 1153. Under this second step, where there is no applicable CBA exemption, Section 301 preemption still applies if the resolution of a plaintiff's minimum wage claim (for example) requires interpretation of the CBA. *See Mellon v. Universal City Studios, LLC*, 625 F. Supp. 3d 1007, 1014 - 1016 (C.D. Cal. Sep. 2, 2022) (denying motion to remand because "resolution of [plaintiff's] minimum wage claim will require interpreting the CBA to determine whether he was compensated for time spent undergoing security checks through Article 27."); *Giles, supra,* 2022 WL 3370793, *6 (holding minimum wage claim preempted because resolving that claim would require an interpretation of terms "actual time worked" and "show-up pay" as used in the CBA).

Notably, whether Plaintiff's operative pleading mentions the CBA is not relevant to the Section 301 preemption analysis. *Curtis*, 913 F.3d at 1152; *Radcliff v. San Diego Gas & Elec. Co.*, 519 F. Supp. 3d 743, 750 (S.D. Cal. 2021); *Mellon*, 2022 625 F. Supp. 3d 1007, 1012; *Ayon v. Zero Waste Sols., Inc*, 2021 WL 4065716, *3 (E.D. Cal. Sept. 7, 2021).

### B. Plaintiff's Second Cause of Action For Overtime Is Preempted Under *Curtis* Step One.

In Plaintiff's Second Cause of Action, Plaintiff asserts that "[a]t all relevant times, Defendant failed to conform its pay practices to the requirements of the law. This unlawful conduct includes, but is not limited to, Defendant's failure to pay for all hours properly worked off the clock…which resulted in these individuals not being paid for all overtime hours worked." (Mertes Decl., **Exh. 1**, Complaint, ¶ 60.) However, Plaintiff has no valid state law overtime claim because the Labor Code Section 514 exemption applies. Section 514 provides an overtime exemption where "an employee [is] covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime

hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage."

First, the CBA provides for a range of wages, hours, and working conditions. (*See* provisions quoted in Sections IV.B.1, IV.B.3, and IV.B.6 *supra*.)

Second, the CBA provides premium wage rates for all overtime hours worked. (*See* provisions quoted in Section IV.B.2, *supra*.)

Third, the CBA provides hourly rates of pay well in excess of 30 percent above the then-current California minimum wage. (*See* Section IV.B.1, *supra*.)

Accordingly, the Section 514 overtime exemption, which has been construed and applied broadly by state and federal courts, clearly applies here. S*ee Vranish v. Exxon Mobil Corp.*, 223 Cal. App. 4th 103, 109 (2014) (where Section 514's requirements are met, an employer is only required to pay for overtime as defined by the collective bargaining agreement and Section 510 simply does not apply); *Curtis*, 913 F.3d at 1154-55 ("While section 510 establishes a default definition of overtime applicable to non-unionized employees, unionized employees 'have sought and received alternative wage protections through the collective bargaining process'") (*citing Vranish*; *quoting Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1067 (9th Cir. 2000)).

Where, as here, the Section 514 exemption applies to a union-represented plaintiff, the "right to overtime 'exists solely as a result of the CBA,' and therefore is preempted under § 301." *Curtis*, 913 F.3d at 1154; *accord, e.g., Giles*, *supra*, 2022 WL 3370793, *4; *Braswell v. AHMC San Gabriel Valley Med. Ctr. LP*, 2022 U.S. Dist. LEXIS 42113, *11 (C.D. Cal. Mar. 8, 2022); *Rodriguez v. Gonsalves & Santucci, Inc.*, 2022 WL 161892, *4 (N.D. Cal. Jan. 18, 2022) (*citing Curtis*, 913 F.3d at 1153-55); *Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1203-04 (C.D. Cal. 2015) (same).

### C. Plaintiff's First Cause Of Action (Minimum Wages) Is Preempted Under *Curtis* Step One and Step Two.

Plaintiff's First Cause of Action is preempted because the claim arises out of Plaintiff's preempted overtime claim and requires interpretation of the CBA. Even if it were not preempted, the Court would have supplemental jurisdiction over this claim.

Plaintiff alleges that he and putative class members "at all relevant times, Plaintiff and other non-

exempt employees worked shifts that lasted longer than 8.0 hours in a workday and resulted in non-exempt employees regularly working more than 40 hours in a workweek." (Mertes Decl., **Exh. 1**, Complaint, ¶ 24.) Plaintiff further alleges that Defendant "consistently failed to accurately record and pay for all time worked, including the time non-exempt employees were under the employer's control." (*Id.* at ¶ 34.) Plaintiff does not allege that he ever worked or was scheduled for a day as to which overtime obligations would not attach ***if*** Plaintiff had worked more time than that for which he was paid (*e.g.*, Plaintiff does not allege that he ever worked less than 8 hours in a day and was not paid minimum wage for any of that time.). To the contrary, Plaintiff claims that he and other members of the putative class "regularly" worked in excess of eight (8) hours in a day and/or forty (40) hours in a week." (*Id.* ¶ 24.) In all respects, Plaintiff combines the alleged factual bases for his minimum wage and overtime claims, without differentiation. Collectively, the claims in Paragraphs 19, 20, 24, and 27 of the Complaint, and the lack of any additional supporting detail in the First Cause of Action, make it clear that Plaintiff's so-called "minimum wage" claim is inseparable from Plaintiff's overtime claim. Accordingly, Plaintiff's First Cause of Action, lacking any independent life is preempted for the same reason as Plaintiff's overtime claim. *See Chavez v. Smurfit Kappa N. Am. LLC*, 2018 WL 8642837, *4 (C.D. Cal Oct 17, 2018) (holding that a minimum wage claim, that could only arise out of plaintiff's preempted overtime claim, was also preempted under section 301); *see also Rodriguez*, *supra*, 2022 WL 161892, *6 ("because the claim for unpaid minimum wages substantially depends on an analysis of the CBA, the LMRA preempts the claim."); *Giles*, *supra*, 2022 WL 3370793, *6; *Mellon*, *supra*, 625 F. Supp. 3d at 1014.

In the alternative, Plaintiff's First Cause of Action is preempted under *Curtis* Step Two because interpretation of the various provisions of the CBA requiring pay for hours worked is required to resolve the minimum wage claim. By way of example, Section 8 (Hours) of the CBA details numerous provisions related to guaranteed pay, shift length, and travel pay that will require the interpretation of terms such as "required to work," "FVE," and "normal workday," among others. (*See* provisions quoted in Sections IV.B.3, and IV.B.6 *supra*.) Accordingly, the minimum wage claim is preempted under *Curtis* Step 2. *See Rodriguez*, *supra*, 2022 WL 161892, at *5 (finding, where plaintiff alleged "defendant failed to pay minimum wages for off-the-clock activity," resolution of minimum wage claim required, "[a]t minimum, ... interpretation of CBA terms such as 'actual hours worked' and 'show up expenses'"); *Giles*, *supra*,

2022 WL 3370793, at *6 (minimum wage claim preempted because resolving that claim would require interpretation of contractual terms "actual time worked" and "show-up pay"); *Mellon*, *supra*, 625 F. Supp. 3d 1007, 1014-1016 1014 (denying motion to remand because "resolution of [plaintiff's] minimum wage claim will require interpreting the CBA to determine whether he was compensated for time spent undergoing security checks.")

In any event, if the Court finds that any portion of Plaintiff's First Cause of Action is not preempted, the Court has supplemental jurisdiction because any non-preempted claims form part of the same case or controversy as the preempted claims. *See Gay v. Pac Steel Grp*, 2021 WL 2917095, *3 (N.D. Cal Jun. 15, 2021) (finding supplemental jurisdiction for minimum wages, unpaid wages, non-compliant wage statements, and other claims when overtime, meal period, and rest period claims were preempted).

**D. Plaintiff's Fifth Cause of Action for Failure to Pay All Sick Time is Preempted Under *Curtis* Step One.**

In his Fifth Cause of Action, Plaintiff alleges Defendant failed to provide "Plaintiff and the Class the legally required paid sick days at the legal rate pursuant to Labor Code §§ 246(a), (b)." (Mertes Decl., **Exh. 1**, Complaint, ¶ 75.) The Labor Code contains two potentially applicable CBA exemptions in Labor Code Sections 245.5(a)(1) and (a)(2). If either of these exemptions apply, then Plaintiff's paid sick leave law claim is preempted under Section 301. *Brumble v. Andrew M. Jordan, Inc.*, 2023 WL 4053418, *2-3 (N.D. Cal. June 16, 2023) (under *Curtis* and *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053 (9th Cir. 2007), sick time pay claim was preempted where Labor Code Section 245.5 CBA exemption applied). Here, Plaintiff's Paid Sick Leave Claim is preempted because at least one of the available CBA exemptions is met.

The Labor Code Section 245.5(a)(2) exemption applies when "a valid collective bargaining agreement … expressly provides for the wages, hours of work, and working conditions of employees, premium wage rates for all overtime hours worked, and regular hourly pay of not less than 30 percent more than the state minimum wage rate, and the agreement … expressly waives the requirements of this article in clear and unambiguous terms." Most of these elements are the same as the elements comprising the Labor Code Section 514 exemption; the CBA meets these elements for the reasons discussed in Section

V(B) above. The only other element of the Section 245.5(a)(2) exemption is met by Section 10 of the CBA, which states, in pertinent part, that the CBA "shall operate to waive all provisions of the California Healthy Workplace Healthy Family Act of 2014 (AB 1522), and shall supersede and be considered to have fulfilled all requirements of the law as presently written, and/or amended during the life of this Agreement." (Lee Decl., **Exh. A**, p. 11; s*ee also* Section IV.B.5, *supra*.) This is a clear and unambiguous waiver of the state paid sick leave law. Thus, Plaintiff's sick time pay claim is preempted under *Curtis* Step One.

**E. Plaintiff's Derivative Wage Statement, Waiting Time Penalty, and UCL claims (Sixth, Seventh, and Ninth Causes Of Action) Are Preempted Under *Curtis* Step One.**

Plaintiff's Sixth Cause of Action (wage statements), Seventh Cause of Action (waiting time penalties under Labor Code Sections 201-203), and Ninth Cause of Action (restitution under UCL) are all, in whole or in part, derivative of Plaintiff's claims that are preempted under Section 301 for the reasons described above. (Mertes Decl., **Exh. 1**, Complaint [all derivative claims are based on prior allegations in the Complaint].)

All of these derivative claims are preempted under Section 301 for this reason. *Giles*, *supra*, 2022 WL 3370793, *6-7; *Rodriguez*, *supra*, 2022 WL 161892, *6; *Mellon*, *supra*, 625 F. Supp. 3d 1007, 1014; *Jimenez v. Young's Mkt. C*o., 2021 WL 5999082, *13 (N.D. Cal. Dec. 20, 2021); *Vasquez v. Packaging Corp. of Am*., 2019 WL 4543106, *4 (C.D. Cal. Jun. 7, 2019).

**F. Plaintiff's Labor Code Section 2802 Claim Is Preempted (Eighth Cause of Action) Under *Curtis* Step Two.**

Plaintiff vaguely alleges SFBA violated Labor Code Section 2802 as follows: "Defendant uniformly failed to reimburse non-exempt employees for the necessary costs incurred in discharging their duties, including, but not limited to, the use of cellphone (sic) for work related purposes." (Mertes Decl., **Exh. 1**, Complaint, ¶ 41.) Plaintiff's Complaint provides no further detail or information to support his purported claim for unreimbursed expenses.

Section 301 preemption applies to Plaintiff's Eighth Cause of Action because this "state law right is substantially dependent on analysis of the CBA." *See Curtis*, 913 F.3d at 1153. The case law provides ample guidance for a situation such as this, where a union-represented plaintiff makes broad and vague

expense reimbursement allegations, and the applicable CBA contains a raft of relevant expense reimbursement provisions. *See, e.g.*, *Rodriguez*, *supra* 2022 WL 161892, *4-5 (Section 301 preemption applied to expense reimbursement claims for, among other things, cell phone, mileage, and gas costs, and reasoning: "[T]he failure to pay business expenses … substantially depends on an analysis of the CBA. The plaintiff claims an entitlement to reimbursement for purchasing mandatory work uniforms, safety equipment, laundering uniforms, mileage and gas costs, use of cell phones, and tools. The CBA provides for reimbursable expenses for mileage and gas, and the terms about mileage and routes require analysis and interpretation. Similarly, … it provides for workers to furnish some equipment and the employer to provide housing for certain equipment and safety equipment. It describes employees' entitlement to protective clothing and equipment if they work with caustic substances. Resolution of the claim turns on the analysis of the CBA and interpretation of its terms, and the LMRA thus preempts these claims that are substantially dependent on analysis of the CBA."); *Linebarger v. Graphic Packaging International, LLC*, 2020 WL 1934958, *6 (C.D. Cal. Apr. 22, 2020) (finding Section 301 preemption of cell phone expense reimbursement claim where CBA included language regarding the purchase of tools necessary to complete the work); *Gay v. Pac Steel Group*, 2023 U.S. Dist LEXIS at *20 (N.D. Cal Sept 15, 2023) (applying LMRA 301 preemption and holding that the CBA would need to be interpreted in order to decide [Plaintiff's] unreimbursed business expense claim).

In this regard, the CBA contains numerous provisions that provide for expense reimbursement: Section 9 requires the Company to reimburse employees for certain uniforms and Section 4 requires the Company to reimburse employees for certain security guard training. (*See* provisions quoted in Section IV.B.5 *supra*.) As in *Rodriguez* and *Linebarger*, this claim is preempted by Section 301 because the resolution of Plaintiff's expense reimbursement claims requires interpreting and applying the various CBA provisions regarding expense reimbursement.

**H. The Court Has Supplemental Jurisdiction Over Plaintiff's Remaining Claims.**

If this Court finds that any claims in the Complaint are not preempted by Section 301, the entire action is still removable under 28 U.S.C. § 1441(c), because this Court has supplemental jurisdiction under 28 U.S.C. § 1367. All claims in the Complaint are sufficiently related to form part of the same case or controversy. *See Giles*, *supra*, 2022 WL 3370793, *6 (court exercised supplemental jurisdiction over non-

preempted rest break claim where overtime, meal break and minimum wage claims were preempted by Section 301); *Jimenez*, *supra*, 2021 WL 5999082, at *21 (exercising supplement jurisdiction because the plaintiffs' remaining claims of minimum wage, rest period, and unpaid wages "arose from the same working conditions and relationship" with the defendants during the same period as the plaintiffs' overtime and meal period claims).

## VI. NOTICE OF REMOVAL TO ADVERSE PARTY AND STATE COURT

Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Northern District of California, the undersigned is providing written notice of such filing to Mehrdad Bokhour, Bokhour Law Group, P.C. and Joshua Falakassa, Falakassa Law, P.C., Plaintiff's counsel of record. In addition, a copy of this Notice of Removal will be filed with the Clerk of the Superior Court of the State of California, County of San Francisco. (Mertes Decl., ¶ 10.)

## VI. CONCLUSION

For the reasons provided herein, Defendant hereby removes this action from the California Superior Court, in and for the County of San Francisco, to the United States District Court, Northern District of California. Defendant respectfully requests that this Court retain jurisdiction for all further proceedings.

Dated: September 14, 2026

LITTLER MENDELSON, P.C.

/s/ *Fernanda Gonzalez*

John C. Fish, Jr.
Courtney Chambers
Emily Mertes
Fernanda Gonzalez

Attorneys for Defendants
SAN FRANCISCO BASEBALL ASSOCIATES LLC